In the Supreme Court of Georgia

Decided: September 12, 2016

S16A1251.  ELLIS v. THE STATE.

HUNSTEIN, Justice.

Appellant Samuel Ellis was tried and convicted of malice murder and

related offenses in connection with the April 2009 shooting death of Stephen

Anim.[1]  Ellis appeals, alleging that the evidence was insufficient to sustain his

[1] On August 14, 2009, a Fulton County grand jury indicted Samuel Ellis, along with co-defendant Quantavious Harris, for malice murder, felony murder predicated on aggravated assault, aggravated assault, criminal attempt to commit armed robbery and possession of a firearm during the commission of a crime.  Ellis and Harris were tried separately.  In May 2012, following a three day jury trial, Ellis was convicted of all counts.  He was sentenced to life for the malice murder, 5 years' probation consecutive for the criminal attempt conviction, and 5 years' probation (suspended) consecutive for the weapons charge.  The felony murder count was vacated by operation of law, see Malcolm v. State, 263 Ga. 369 (4) (434 SE2d 479) (1993), and the trial court correctly merged the aggravated assault count with the malice murder count.  See Bell v. State, 284 Ga. 790 (1) (671 SE2d 815) (2009).  Ellis timely filed a motion for new trial on May 21, 2012, which was subsequently amended.  The trial court held a hearing on Ellis' motion for new trial on January 8, 2015, and denied the motion in an order filed on October 29, 2015.  Ellis timely filed a notice of appeal, which was docketed to the April 2016 term of this Court, and this case was thereafter submitted for decision on the briefs.

convictions and that the trial court erroneously admitted his custodial statement at trial. Finding no error, we affirm.

Viewed in the light most favorable to the jury's verdict, the evidence adduced at trial established as follows. In the early morning hours of April 22, 2009, Stephen Anim was found dead in the driver's seat of his taxi cab outside of Big Bethel Village in Fulton County, Georgia. On the night of his death, victim Anim was in his taxicab at the H.E. Holmes MARTA station waiting for potential passengers. There, Ellis and Harris got into the victim's cab and requested to be taken to Big Bethel Village, a retirement community within walking distance of Harris' home. Upon arriving at their destination, Harris brandished a gun, demanded money from the victim and then shot him in the back of the head. Anim was discovered with a single gunshot wound to the back of his head, which was later determined to be his cause of death. A .380 cartridge casing was recovered from the floor of the front passenger side of the taxi and, during the investigation, law enforcement learned that a GPS unit and $700 were missing from the cab. Witnesses later identified Ellis and Harris as the two men that entered the victim's cab immediately prior to his death.

Ellis[2] was interviewed by law enforcement on three separate occasions. During the first interview, Ellis denied having any involvement in the shooting and told police he was with his friend Lamonte Davis. In the second interview, Ellis stated that he was with his school friend, Gerald Wise, and not with Davis on the night of the shooting. He then placed himself and Wise in the victim's cab, but blamed the shooting and robbery on Wise. Finally, in his last interview, Ellis exonerated Wise and then implicated both himself and Harris in the crimes. Specifically, Ellis admitted that: prior to getting into the victim's cab, Harris was planning to rob the victim; Ellis knew Harris was carrying a handgun; while in the backseat of the taxicab, Harris pulled out a black .380 caliber handgun and turned off the safety; after they arrived at Big Bethel Village, Harris turned the weapon on the driver and demanded money from him; and, Harris shot the victim after he hesitated to hand over any money. Ellis stated that, after the shooting, the pair ran from the scene, confessed to Harris' mother about the shooting and then, with the help of Harris' family, destroyed evidence and concocted stories in order to cover up their roles in the murder.

---

[2] Ellis was sixteen years old at the time of the crime and subsequent interviews.

Finally, law enforcement obtained phone records which showed several text messages sent and received by Harris' cell phone, which was being used by both Harris and Ellis prior to the victim's murder. These messages revealed the intent of both defendants to rob and kill the victim.

1. Ellis contends that the evidence presented at trial was insufficient to sustain his criminal convictions. We disagree. The evidence presented at trial showed that Ellis and Harris were identified by witnesses as the two men who were last seen entering the victim's taxicab. Ellis misled law enforcement by giving false statements, including inculpating a totally innocent party in order to save himself, before admitting his participation in and knowledge of the crimes alleged. Finally, numerous text messages sent to and received by the phone to which both Ellis and Harris had access, showed their intent to commit the armed robbery and murder. Accordingly, the evidence was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Ellis was guilty of the crimes for which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Prior to trial, Ellis moved to suppress his statements to law enforcement, in part because those law enforcement officers failed to

4

specifically re-read Ellis his Miranda[3] rights prior to his third interview. The trial court denied the motion, finding that Ellis was properly informed of his Miranda rights while in the presence of his legal guardian, reminded of these rights prior to speaking with law enforcement, and freely and voluntarily agreed to waive them thereafter. Ellis argues now, as he did below, that the trial court erred in admitting the May 16 statement because he was not specifically re-read his Miranda rights. We find this argument to be without merit.

"The trial court determines the admissibility of a defendant's statement under the preponderance of the evidence standard considering the totality of the circumstances." (Citation omitted.) Vergara v. State, 283 Ga. 175, 176 (657 SE2d 863) (2008). "Although we defer to the trial court's findings of disputed facts, we review de novo the trial court's application of the law to the facts." Clay v. State, 290 Ga. 822, 822-823 (1) (725 SE2d 260) (2012).

The record supports the trial court's findings. Ellis was interviewed on three separate occasions by law enforcement – once on May 3, once on May 9, and then for a third time on May 16, 2009. Ellis made his first statement on

---

[3] Miranda v. Arizona, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

May 3 after voluntarily going to the police station and speaking with homicide detectives in the presence of his legal guardian; he was not in custody at this time and went home after this interview. Ellis again went to the police station voluntarily for his second interview; he was informed of his <u>Miranda</u> rights, and both he and his legal guardian reviewed and signed a waiver of rights form. Ellis indicated that he understood his rights, after which he gave a statement in the presence of his legal guardian.

With respect to his third interview, Ellis once again went to the police department voluntarily and was interviewed in the presence of his legal guardian. Prior to the start of the interview, officers showed Ellis and his guardian the previously signed waiver form. Although they did not re-read each specific right to Ellis, officers reminded him that his rights were still in full force and effect, and informed him that he was under no obligation to speak with them. Ellis indicated that he recognized the waiver form and wished to speak with law enforcement. It was during this interview that Ellis implicated both himself and Harris in the victim's murder.

Neither Federal nor Georgia law mandates "that an accused be continually reminded of his rights once he has intelligently waived them." <u>Biddy v.</u>

Diamond, 516 F2d 118, 122 (5th Cir. 1975) (held Miranda warnings not stale after 12 days).  See also United States v. Barner, 572 F3d 1239 (A) (11th Cir. 2009) (no need for reiteration of Miranda rights where accused initiated interview with law enforcement and had been informed of his rights 12 days earlier); Walker v. State, 296 Ga. 161, 170-71 (3) (a) (766 SE2d 28) (2014) ("There is no duty to repeat the Miranda warnings for a follow-up interview that is part of a continuing interrogation"); Moten v. State, 231 Ga. 642 (1) (203 SE2d 527) (1974) (warnings not stale after 2 days and when officer reminded accused he had signed a waiver of rights).

Prior to his May 16 interview, both Ellis and his legal guardian were shown and reviewed the signed May 9 waiver of rights form.  Ellis was informed that these rights were still in effect and that he was not obligated to speak with the officers.  Based on the totality of the circumstances, the trial court did not err in finding Ellis' May 16 statement to be freely, knowingly and voluntarily given and subsequently admitting the statement at trial.

Judgment affirmed.  All the Justices concur.