311 Ga. 44
FINAL COPY

S21A0334.  GADDY v. THE STATE.

MCMILLIAN, Justice.

William Gaddy was convicted of felony murder and related crimes in connection with the death of Addisyn Sanders, the two-year-old daughter of Gaddy's girlfriend, Tiffany Harris.[1] Gaddy appeals, asserting that the trial court erred in denying the motion

---

[1] The crimes occurred on June 16, 2015. On September 11, 2015, a Fulton County grand jury indicted Gaddy on charges of malice murder (Count 1), felony murder predicated on cruelty to children in the first degree (Count 2), felony murder predicated on aggravated battery (Count 3), felony murder predicated on aggravated assault (Count 4), two counts of cruelty to children in the first degree (Counts 5-6), aggravated battery (Count 7), and aggravated assault (Count 8). At a trial that commenced on February 27, 2018, the jury acquitted Gaddy of malice murder but found him guilty of the remaining charges. The trial court sentenced Gaddy to serve life in prison for felony murder predicated on cruelty to children in the first degree (Count 2). The other two counts of felony murder were vacated by operation of law, and the trial court merged the remaining charges for sentencing purposes; those rulings have not been challenged on appeal. See *Dixon v. State*, 302 Ga. 691, 698 (808 SE2d 696) (2017). Gaddy timely filed a motion for new trial, which was amended on November 26, 2019. Following a hearing on September 15, 2020, the trial court denied the amended motion for new trial on September 18, 2020. Gaddy timely appealed, and the case was docketed to this Court's term beginning in December 2020 and thereafter submitted for a decision on the briefs.

to suppress his custodial statement. For the reasons that follow, we affirm.

1. The evidence presented at trial showed that Gaddy and Harris began a romantic relationship in April 2014. In early 2015, Gaddy, Harris, and Addisyn moved in with Gaddy's grandmother in Palmetto. Gaddy generally watched Addisyn while Harris was at work during the day. On the afternoon of June 16, 2015, Gaddy's ten-year-old brother, C. F., who often visited, was playing video games in one of the home's bedrooms while Gaddy and Addisyn watched television in the living room. C. F. heard Addisyn crying while she said "no" and "stop" just before there were three thumps that sounded like a head banging against a wall. Then, C. F. saw Gaddy carry Addisyn's limp body to another bedroom and leave her there.

When Harris returned home around 4:30 p.m., she asked where Addisyn was, and Gaddy responded that she was in the back. Harris discovered Addisyn, who had had no injuries when she left for work that morning, face-down on the floor of the grandmother's

2

bedroom. When paramedics arrived, Addisyn was unconscious with fixed pupils, indicating a severe brain injury, and significant bruising on the right side of her forehead and on her lower abdomen. Gaddy stated that Addisyn had been jumping on the bed and fell, but the paramedics did not believe that would explain Addisyn's injuries.

Due to the nature of her injuries, Addisyn was airlifted to a children's hospital where it was determined that she had a closed fracture at the base of her skull with multiple areas of severe swelling and bleeding around the brain. She also had an internal injury to her small intestine that indicated significant trauma to the abdomen and multiple areas of bruising to her head, abdomen, and buttocks. Doctors determined that Addisyn was brain dead, and she was removed from life support several days later. The pediatric emergency room physician who treated Addisyn testified that her injuries did not in any way fit with the provided history of her falling off a bed, but were instead caused by repeated, non-accidental blunt-force trauma to her head and abdomen. The State's medical

3

examiner also opined that the injuries were not consistent with falling off a bed or any other singular accident.

Gaddy initially denied any role in Addisyn's injuries, but he eventually told officers in a statement taken at the police station that he had been under a lot of stress and "snapped" that afternoon. He grabbed Addisyn around her neck, and she told him "no." This made him even angrier, and he hit her in the stomach with a "weak fist," but he could not remember how many times. When asked whether he kicked her in the head, he broke down and said he must have because his foot was "killing [him]." An audio recording of this statement was played for the jury at trial.[2]

2. Gaddy asserts that the trial court erred in not suppressing his custodial statement because he was not fully informed of his rights under *Miranda*[3] at the outset of that interview. "The trial

---

[2] For non-death penalty murder cases that were docketed to the term of court beginning in December 2020, we no longer conduct a sua sponte review of the sufficiency of the evidence. See *Davenport v. State*, 309 Ga. 385, 399 (4) (b) (846 SE2d 83) (2020). Gaddy does not contest the sufficiency of the evidence to support his convictions.

[3] *Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

4

court determines the admissibility of a defendant's statement under the preponderance of the evidence standard considering the totality of the circumstances. Although we defer to the trial court's findings of disputed facts, we review de novo the trial court's application of the law to the facts." *Clay v. State*, 290 Ga. 822, 822-23 (1) (725 SE2d 260) (2012) (citations and punctuation omitted).

At a *Jackson-Denno*[4] hearing, Detective Lee Gragg testified that he responded to a call that a child had been critically injured and was being transported to Egleston Hospital. When Detective Gragg arrived at the hospital, he attempted to locate Gaddy because the child had sustained the injuries while under Gaddy's care. Gaddy eventually joined Harris in the hospital waiting room approximately 45 minutes later. Although he did not place Gaddy under arrest at that time, Detective Gragg read Gaddy his *Miranda* rights from a card that he carries with him "just in case there was anything that c[a]me up at a later point." Gaddy indicated that he understood his rights and agreed to speak with him. Gaddy stated

---

[4] *Jackson v. Denno*, 378 U.S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

that he was 20 years old and had completed high school; he did not appear to be intoxicated or otherwise incapacitated. Detective Gragg denied offering any benefit or threatening Gaddy in any way. After speaking for about ten minutes, there was a ten- to twenty-minute break when a doctor came into the room to provide an update on the child's condition. When the interview resumed, Detective Gragg asked Gaddy if he remembered the *Miranda* rights, and Gaddy confirmed that he did.

Because Gaddy's explanations did not match up with Addisyn's reported injuries, Detective Gragg requested that they go to the police station to continue speaking. Gaddy then threatened to kill himself, so Detective Gragg placed him in handcuffs, and officers transported Gaddy to the Palmetto Police Department. Because it had been less than an hour since the initial interview, instead of re-reading the *Miranda* warnings, Detective Gragg asked Gaddy if he remembered the *Miranda* rights that had been read to him at the hospital, and Gaddy confirmed that he did and agreed to continue speaking about the events that led to Addisyn's injuries. Gaddy

6

never asked for an attorney nor showed any reluctance to speaking with the detective.

After hearing Detective Gragg's testimony and reviewing the audio recording of the interview, the trial court denied Gaddy's motion to suppress, finding that under a totality of the circumstances, Gaddy's statement was freely and voluntarily given without hope of benefit and free from coercion. The trial court reached the same conclusion following Gaddy's motion for new trial hearing, finding that the "so-called three interviews essentially amounted to one continuous interview that took place over a few hours" and that renewed *Miranda* warnings were therefore unnecessary.

On appeal, Gaddy does not dispute that Detective Gragg properly read him his *Miranda* rights before he was first questioned at the hospital. Nonetheless, Gaddy asserts that, because he was not in custody at the time Detective Gragg initially read the *Miranda* warnings, the detective was required to repeat the warnings once Gaddy was in custody at the police station. Gaddy concedes that he

7

can point to no authority in support of this assertion. Indeed, we have previously stated that "[n]either federal nor Georgia law mandates that an accused be continually reminded of his rights once he has intelligently waived them." *Ellis v. State*, 299 Ga. 645, 648 (2) (791 SE2d 16) (2016) (no duty to repeat *Miranda* warnings after suspect was read *Miranda* warnings prior to a noncustodial statement one week prior) (citation and punctuation omitted).

Thus, when conducting a follow-up interview or a continuation of a previous interview, a reminder of *Miranda* rights may be permitted in place of a complete restatement. See *Scott v. State*, 307 Ga. 37, 42 (2) (834 SE2d 88) (2019) (because defendant's second, custodial interview occurred the next day and was a continuation of the first interview, investigator was not required to repeat *Miranda* warnings); *Walker v. State*, 296 Ga. 161, 169-71 (3) (a) (766 SE2d 28) (2014) (no duty to repeat *Miranda* warnings for follow-up interview conducted five or six hours later as part of a continuing interrogation). Even where, as here, the interviews took place in two different locations, we have held that conducting interviews in

multiple places does not require repeating *Miranda* warnings at each location. See, e.g., *Mainor v. State*, 259 Ga. 803, 804-05 (3) (387 SE2d 882) (1990) (although defendant spoke with law enforcement at the scene, a location near the scene, and at the police station as part of a continuous interview following hunting incident, it was not necessary to re-advise him of *Miranda* rights at each location). Accordingly, the trial court did not err in admitting the statements at trial.

*Judgment affirmed. All the Justices concur.*

Decided March 1, 2021.

Murder. Fulton Superior Court. Before Judge Newkirk.

*John R. Monroe*, for appellant.

*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, David K. Getachew-Smith, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Mark S. Lindemann, Assistant Attorney General,* for appellee.