301 Ga. 234
FINAL COPY

S17A0117.  THE STATE v. HARRIS.

HUNSTEIN, Justice.

Following a September 2011 jury trial in Fulton County, Georgia, Appellee Quantavious Harris was convicted of felony murder and related offenses in connection with the April 22, 2009 shooting death of taxicab driver Stephen Anim.[1]  Harris timely filed a motion for new trial claiming, among other things, that trial counsel was ineffective for failing to move to suppress text messages obtained from Harris' cell phone by law enforcement without a warrant.  After a hearing, the trial court agreed with Harris and granted the motion.  The State appeals, contending that the trial court's conclusion

---

[1] The record shows that a Fulton County grand jury indicted Harris along with Samuel Ellis on August 14, 2009 for malice murder, felony murder predicated on aggravated assault, aggravated assault, criminal attempt to commit armed robbery, and possession of a firearm during the commission of a crime.  The co-indictees were tried separately.

regarding <u>Strickland</u>[2] prejudice was erroneous.  We agree and therefore reverse the trial court's grant of a new trial.

1.    At trial, the State adduced text messages that were sent and received by Harris' cell phone from April 21 through April 22, 2009,[3] focusing on the following messages which were sent hours prior to Anim's death:

| Date | Time | Sender | Message |
|---|---|---|---|
| April 21 | 2:43 p.m.[4] | Mother[5] | "Man go get my strap man!" |
| April 21 | 7:09 p.m. | Harris | "Yeah but im bout 2 hit dis lick" |
| April 21 | 7:10 p.m. | Jayesha[6] | "I thought u been did dat" |
| April 21 | 7:12 p.m. | Harris | "Naw but I'm gon have 2 kill dis n****r" |
| April 21 | 7:13 p.m. | Jayesha | "Baby plz dnt do dat" |
| April 21 | 7:13 p.m. | Harris | "I need da money" |

___

[2] <u>Strickland v. Washington</u>, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

[3] At the motion for new trial hearing, the parties stipulated that the cell phone subscription belonged to Harris for the purposes of "Fourth Amendment standing."

[4] The pertinent records are in Central Time.  We have converted the times to Eastern Time for the purposes of this opinion.

[5] This text message was sent from the cell phone belonging to Harris' mother.

[6] Jayesha is the mother of Harris' child as well as his on-again-off-again girlfriend.

The State also pointed to a message showing that Harris' co-indictee, Samuel "Handyman" Ellis, had access to, and used Harris' phone prior to the murder. This message was sent at 11:08 p.m., on April 21 and stated, "Dis Handyman um on my way Quan go ova Jay house."

While trial counsel objected to the introduction of all text messages on the basis of hearsay and lack of proper authentication, she did not challenge the records based upon the State's failure to obtain a search warrant as required by OCGA § 16-11-60 et seq., and 18 USC § 2703. The text messages were subsequently admitted over these objections. On September 12, 2011, Harris was convicted of felony murder and sentenced to life imprisonment.

Harris subsequently filed a motion for new trial and, after obtaining new counsel, he amended the motion, contending that his trial counsel was ineffective for failing to move to suppress the text messages. Specifically, Harris argued that, because the State obtained the records with a court order instead of a search warrant, the text messages were obtained illegally and would have been suppressed. At the hearing on the amended motion for new trial, the trial court received testimony from both the lead investigator on the case and Harris' trial counsel; the State, however, neither adduced a search

3

warrant for Harris' text messages into evidence nor questioned the lead investigator regarding the same.

In its order granting Harris' motion, the trial court concluded as follows:

> The contents of electronic communications less than 180 days old can only be obtained pursuant to a warrant issued after a showing of probable cause. See OCGA § 16-11-66.1; 18 USC § 2703; OCGA § 17-5-21; and Hampton v. State, 295 Ga. 665 (2014).
>
> At trial, the State introduced the contents of text messages sent from Defendant's phone that were obtained by a court order, but not by a warrant. These messages were less than 180 days old at the time they were obtained. Defendant's trial counsel was not aware of the need for a warrant, and failed to file a motion to suppress illegally seized evidence. OCGA § 17-5-30.
>
> Trial counsel's failure to file a motion to suppress was professionally unreasonable, as it was not an informed strategic decision based on reasonable professional judgment. See Smith v. State, [296 Ga. 731 (2015)].
>
> Defendant established a strong showing that had trial counsel filed a motion to suppress, the contents of the text messages would have been suppressed.  Id. at [733. See also] Hampton v. State, 295 Ga. 665. Absent the improperly obtained text messages, the remaining evidence against Defendant was not overwhelming.
>
> Counsel's deficiency had a prejudicial effect on the Defendant, violating his Fourth Amendment rights and creating a reasonable probability that, but for the deficiency on the part of defendant's trial counsel, the result of the proceeding would have been different.  Smith, supra; Hargrove v. State, 291 Ga. 879, 881 (2012); and Battles v. Chapman, 269 Ga. 702, 707 (1998).

The State filed a motion for reconsideration, arguing that, had defense counsel timely filed a motion to suppress the text messages, the State could have cured its error by obtaining a warrant. In support of this argument, the State attached a search warrant and supporting affidavit to its motion as an exhibit, both of which were obtained subsequent to the hearing on Harris' motion for new trial. However, the State did not request the record be re-opened so this new evidence could be admitted into the record and considered by the trial court. Thereafter, the court denied the State's motion for reconsideration.

2. On appeal, the State continues its uncanny effort to snatch defeat from the jaws of victory by echoing its unsupported argument that its post-motion for new trial attempts to obtain a search warrant show that the State could have corrected its initial error in obtaining the text messages, therefore making them admissible at trial. However, because the search warrant and supporting affidavit were not introduced as evidence at the motion for new trial, they are not a proper part of the record before us on review. See King v. State, 300 Ga. 180, 182 (2) (794 SE2d 110) (2016) ("The appellant bears the burden of proving error by the appellate record," and where "insufficient

5

information was preserved in the record for appellate review, the trial court ruling must be upheld.") (Citation omitted.)).

Turning to the trial court's order, a claim of ineffective assistance of counsel pursuant to <u>Strickland</u> is a mixed question of law and fact. <u>Hulett v. State</u>, 296 Ga. 49, 60 (5) (766 SE2d 1) (2014). Therefore, "[w]hen reviewing a trial court's decision to grant a motion for new trial based on ineffective assistance of counsel, we defer to the trial court's findings of fact unless clearly erroneous, but owe no such deference to its conclusions of law which we apply independently to the facts." (Citations omitted.) <u>State v. Sims</u>, 296 Ga. 465, 468-469 (2) (769 SE2d 62) (2015).

It is well established that <u>Strickland</u> requires a defendant to prove both deficient performance and prejudice in order to succeed on a claim of ineffective assistance of counsel. 466 U. S. at 687. "To show that the performance of his lawyer was deficient, [Harris] must prove that his lawyer performed [her] duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms." <u>Jones v. State</u>, 292 Ga. 593, 599 (7) (740 SE2d 147) (2013) (citing <u>Strickland</u>, 466 U. S. at 687-688 (III) (A)). As for prejudice, "the proper standard requires the

defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U. S. at 669. "If the defendant fails to satisfy either prong of the Strickland test, this Court is not required to examine the other." (Citation omitted.) Propst v. State, 299 Ga. 557, 565 (3) (788 SE2d 484) (2016).

Pretermitting whether trial counsel was deficient for failing to file a motion to suppress the contents of the text messages, we agree with the State that the trial court's prejudice analysis is flawed, as Harris failed to show that, but for trial counsel's deficiency, there is a reasonable probability that the outcome of his trial would have been different. In explaining the prejudice analysis, the Strickland Court stated:

> The governing legal standard plays a critical role in defining the question to be asked in assessing the prejudice from counsel's errors. When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt . . . . In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been

7

affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

Id. at 695-696 (III) (B). The Supreme Court later emphasized that "Strickland's standard, although by no means insurmountable, is highly demanding." Kimmelman v. Morrison, 477 U. S. 365, 382 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986). Indeed, only defendants "who can prove under Strickland that they have been denied a fair trial by the gross incompetence of their attorneys will be granted [relief] and will be entitled to retrial without the challenged evidence." Id. With these principles in mind, and reviewing the totality of the evidence presented at trial, we cannot agree with the trial court that Harris has met this very high burden.

The evidence presented at trial shows that, prior to his death, in the late evening of April 21, 2009, the victim, Stephen Anim, was in his taxicab at the H.E. Holmes MARTA station waiting for potential passengers. Also there

8

were Harris and his friend Ellis who approached another taxi driver and asked for a ride. The driver testified that the men were acting odd, even providing him with different destinations. Evidence was presented at trial that neither of the requested destinations provided to the first driver was where Harris or Ellis resided nor the location where the crime eventually occurred. After the first driver denied the men passage, they approached the victim's cab and requested to be taken to Big Bethel Village, a retirement community where, again, neither Harris nor Ellis resided. However, the evidence showed that the neighborhood where Ellis was staying with Harris' mother and younger brother was walking distance from Big Bethel Village via an inconspicuous cut-through.

Approximately an hour later, Anim was found in the driver's seat of his taxicab sitting outside Big Bethel Village in Fulton County, Georgia. He had suffered a single gunshot wound to the back of his head, which was determined to be his cause of death. A .380 cartridge casing was recovered from the front passenger's side floor of the taxi, and a GPS unit and $700 were missing from the cab.

Harris was eventually interviewed by law enforcement, during which he misled detectives regarding his relationship with Samuel Ellis and admitted:

that he was with Ellis in southwest Atlanta earlier in the day on April 21, 2009, after Ellis had attempted an armed robbery and was still carrying a firearm; that, after Ellis' attempted armed robbery, he met up with Ellis at the H.E. Holmes MARTA station; that he approached the victim and asked for a ride, though he gave conflicting statements as to when he paid the driver; that he sat behind the victim in his taxicab immediately prior to his death, and talked to the victim during the entire ride while Ellis remained silent; and that, after Ellis shot the victim, the men ran through the hidden passage linking Big Bethel Village with the community where Ellis was staying with Harris' mother and younger brother.

Harris was later identified by photo lineup and in a surveillance video as being at the H.E. Holmes MARTA station with Ellis. The video shows the two men getting into the victim's taxicab prior to his murder. Despite these positive identifications, when law enforcement interviewed Harris' mother and younger brother, they misled officers as to whether Harris was with Ellis on the night of the crime.

In addition to the text messages at issue, law enforcement obtained Harris' subscriber information and the cell tower data for his phone from April

21-22, 2009. The cell tower data contradicted portions of the timeline of events Harris had provided to law enforcement in his interview.

Finally, the jury heard similar transaction evidence[7] of Harris' prior armed robbery and aggravated assault of a pizza delivery man that occurred seven months prior to this incident. This prior armed robbery involved a co-defendant, a .380 caliber handgun, and a physical attack on the victim. Moreover, after committing that crime, Harris and his co-defendant fled from the scene on foot, hid from police and, when they were eventually caught, Harris claimed mere presence and blamed the entire crime on his counterpart – the same theory Harris presented to the jury in this case.

While this evidence is not overwhelming, looking at the evidence as a whole, we cannot say that, without the introduction of the text messages, there is a reasonable probability that the outcome of the trial would have been

---

[7] Because Harris was tried prior to the new Evidence Code, the jury was allowed to consider this similar transaction evidence "to show identity, motive, plan, scheme, bent of mind and course of conduct." Pareja v. State, 286 Ga. 117, 119 (686 SE2d 232) (2009). The record shows that, after a pre-trial hearing, the trial court found that the State met its required burden and allowed the introduction of the similar transaction evidence "for the appropriate purposes of course of conduct, motive, intent and lack of mistake."

different. Contrary to Harris' assertion, the State's case did not center on the text messages, nor did the State emphasize these messages as a smoking gun at any point during the trial. Instead, they were a small piece of many moving parts utilized by the State to establish Harris' guilt.

Taking into account the misinformation campaign spearheaded by Harris and his family members, the similar transaction evidence, the location of the crime scene, the fact that Harris and Ellis ran from the scene using an inconspicuous cut-through, the video surveillance showing Harris and Ellis entering the victim's vehicle, Harris' admitted knowledge that Ellis had attempted an armed robbery earlier on the same day and was still armed, Harris' admission that he spoke to the victim the entire cab ride, providing an inference for the jury that Harris was more than merely present, and Harris' admission that he was seated behind the victim during the cab ride – after which the victim was shot in the back of the head – the trial court erred in finding that Harris was prejudiced by his counsel's deficient performance. Accordingly, we reverse the trial court's order granting Harris a new trial and remand the case with direction that the trial court consider the remaining grounds in Harris' motion for new trial.

Judgment reversed and case remanded with direction.  All the Justices concur.

Decided May 1, 2017 — Reconsideration denied May 30, 2017.

Murder. Fulton Superior Court. Before Judge Ellerbe.

Paul L. Howard Jr., District Attorney, Lyndsey H. Rudder, Paige Reese Whitaker, Marc A. Mallon, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, for appellant.

Kevin A. Anderson, for appellee.