**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS***
***COURT. ALL FILINGS MUST BE SUBMITTED WITHIN***
***THE TIMES SET BY OUR COURT RULES.***

**October 28, 2021**

# In the Court of Appeals of Georgia

A21A0952. THE STATE v. WARD.

GOBEIL, Judge.

Relevant to the instant appeal, in March 2018, a jury found Kristin Matthew Ward guilty of child molestation and enticing a child for indecent purposes. Ward appealed these convictions and in June 2019, this Court affirmed in part, vacated in part, and remanded the case with direction to the trial court. *Ward v. State*, 353 Ga. App. 1 (836 SE2d 148) (2019). Specifically, we instructed the trial court on remand to conduct an evidentiary hearing and issue an order addressing whether the State made derivative use of compelled statements made by Ward during an internal affairs investigation through his employer, and whether Ward's trial counsel was deficient for failing to address this issue. Id. at 14, 16 (3). On remand, the trial court conducted

this evidentiary hearing and issued an order granting Ward a new trial. The State has appealed. For the reasons explained below, we affirm the trial court's order.

A complete recitation of the evidence from Ward's trial can be found in our previous opinion, *Ward*, 353 Ga. App. at 1-3. Relevant to the issues presented in this appeal, the record reflects that a teenage boy, G. W., accused Ward of molesting him on multiple occasions. Id. At the time, Ward was an employee of the Athens-Clarke County Police Department. As a result of the allegations, the police department conducted an investigation, led by Jerry Saulters, the then-lieutenant in charge of internal affairs. As part of the investigation, Ward was interviewed by Saulters and answered questions about his relationship with G. W. The police department generated a file associated with the investigation, which was not admitted at trial, but was included in the appellate record. The investigative file contains many documents, including a report from Saulters that summarizes his investigation and the termination notice issued to Ward (which includes a summary of information obtained during Ward's interview with Saulters). The interview itself was captured on video and also included with the investigative file.

Before Ward's trial, trial counsel filed a motion seeking to exclude "all evidence regarding" the internal affairs investigation. After a hearing, the trial court

2

granted Ward's motion, ruling that any statements made by Ward during the investigation were coerced such that they could not be used against him in a criminal trial. Thus, Ward's interview and his response to learning of the specific allegations were not admissible, although statements Ward made to others upon learning of the investigation or statements he made to Saulters outside of the investigation were not a part of the investigation and were admissible.

Although the investigative file and Ward's interview were not admitted at trial, the prosecution team obtained them through an Open Records Act request. Prosecutor Patricia Brooks read through the investigative file and watched at least part of Ward's interview while working on the case. Other prosecutors and the office's investigator also had access to the investigative file prior to Ward's trial.

At trial, Saulters testified to the fact that an internal affairs investigation was conducted. After Ward testified in his own defense that he did not molest G. W., Saulters was re-called by the State as a rebuttal witness. Saulters was asked: "Without getting into any specifics as to the reason for your opinion, if Kris Ward were to testify under oath, would you believe what he had to say?" Saulters responded, "No."

After Ward was found guilty of the above-stated charges, new defense counsel entered an appearance ("appellate counsel"). In the motion for new trial, appellate

3

counsel asserted that trial counsel was ineffective for failing to object to the State's possession and potential derivative use of the internal affairs file. The trial court denied Ward's motion for new trial on this claim, and Ward raised the claim on appeal. We vacated the trial court's order on this issue and remanded the case with instruction. *Ward*, 353 Ga. App. at 1, 16 (3). The trial court subsequently granted Ward a new trial on this issue, and the State has appealed.

The parties do not dispute that the statements made by Ward during the internal affairs investigation "constitute compelled, immunized statements subject to the constitutional protections of the Fifth and Fourteenth Amendments." *Ward*, 353 Ga. App. at 9 (3). See *Garrity v. New Jersey*, 385 U. S. 493, 500 (87 SCt 616, 17 LE2d 562) (1967) (statements made by police officers under threat of termination from employment constitute coerced confessions that cannot be used in a subsequent criminal proceeding). Thus, there is no question that any statements made by Ward during the internal affairs investigation were inadmissible at his trial.

Additionally, the United States Supreme Court has ruled that "evidence derived directly and indirectly" from compelled statements is also prohibited. *Kastigar v. United States*, 406 U. S. 441, 453 (III) (92 SCt 1653, 32 LE2d 212) (1972). This includes a prohibition on "knowledge and sources of information obtained from"

4

compelled statements. *Ullmann v. United States*, 350 U. S. 422, 437 (76 SCt 497, 100 LE 511) (1956). Georgia's Supreme Court has recognized this privilege, stating that "the prosecution should not be free to build up a criminal case, in whole or in part, with the assistance of enforced disclosures by the accused." *Muhammad v. State*, 282 Ga. 247, 250 (3) (647 SE2d 560) (2007) (citation and punctuation omitted).[1]

Thus, as we explained in our prior opinion, the State potentially engaged in prohibited "derivative use" of Ward's *Garrity*-protected statements based on the prosecutors' possession and knowledge of the contents of the internal affairs investigative file while preparing the criminal case against him. *Ward*, 353 Ga. App. at 9-12 (3). And trial counsel was potentially ineffective for failing to object to such derivative use. Id. at 11-12 (3). However, because the trial court had not conducted an evidentiary hearing as required by *Kastigar*, we remanded the case for the trial court to conduct such a hearing.

---

[1] As for the scope of the prohibition on derivative use, in our prior opinion we adopted the Eleventh Circuit's approach, holding that *Kastigar* prohibits only direct or indirect "evidentiary" uses of a compelled statement (and thus rejecting the argument that the prosecutor's mere possession or knowledge of compelled statements was prohibited). *Ward*, 353 Ga. App. at 14-16 (3) (citations omitted). See *United States v. Byrd*, 765 F2d 1524, 1531 (II) (11th Cir. 1985).

We explained the standard for the trial court to apply: "the burden is upon the State to show the absence of taint and that the evidence was derived from legitimate, independent sources." *Ward*, 353 Ga. App. at 13 (3). See also *Kastigar*, 406 U. S. at 460 (IV) (the "burden of proof . . . is not limited to a negation of taint; rather, it imposes on the prosecution the affirmative duty to prove that the evidence it . . . use[d] [was] derived from a legitimate source wholly independent of the compelled testimony") (citation and punctuation omitted). Further, "neither speculation nor conclusory denials of use or derivative use by government officials will substitute for the affirmative showing of an independent source required for *each and every item of evidence* presented to the . . . jury." *Ward*, 353 Ga. App. at 13 (3) (punctuation omitted; emphasis supplied) (citing *United States v. Hampton*, 775 F2d 1479, 1489 (11th Cir. 1985)).

Based on these principles outlined in our previous opinion, the trial court conducted a hearing on remand. At the hearing, three prosecutors and the primary investigator involved in Ward's prosecution all testified regarding the acquisition and use of the internal affairs investigative file. Prosecutors Brooks and Caitlin Yalamanchili both testified to reading through the investigative file (which included the termination letter summarizing Ward's interview) and watching part of Ward's

6

interview, but denied using it to gather additional evidence or shape their questioning of witnesses. Three witnesses from Ward's trial testified at the *Kastigar* hearing: (1) Special Agent Rebecca Herold; (2) Saulters; and (3) Alicia Chandler, who interviewed the victim.

Significantly, Saulters testified at the *Kastigar* hearing that he was frustrated with Ward during the internal affairs interview because Ward was not providing much information. Based on Ward's behavior during the interview, Saulters formed a strong opinion that Ward was not a truthful person. Saulters explained that he met with prosecutors prior to Ward's trial and was instructed not to testify to any statements that Ward made during the interview. However, at trial, he was asked about his opinion of Ward's truthfulness and he responded accordingly. Saulters stated that the prosecutors knew that his opinion of Ward's truthfulness was based in significant part on Ward's conduct during the internal affairs investigation.

After the hearing, the trial court issued its order granting Ward a new trial. Specifically, the trial court found that Saulters testified at trial that he believed that Ward was not a truthful person; an opinion Saulters formed based on statements made by Ward during his compelled internal affairs interview. And, because Ward's truthfulness was central to his defense at trial, the trial court concluded that the

7

influence of the compelled statements on the trial was not harmless. Additionally, the trial court found that the prosecutors admitted to having viewed protected information in the investigative file and "did not take the requisite precautions to ensure" that the *Garrity*-protected statements did not influence the case presented by the State at trial. Finally, the court found that Ward's trial counsel was ineffective for failing to request a *Kastigar* hearing before or during the trial.

Where a trial court grants a motion for new trial on special grounds involving a question of law, we review de novo. *O'Neal v. State*, 285 Ga. 361, 363 (677 SE2d 90) (2009). In reviewing a claim of ineffective assistance of counsel, "we defer to the trial court's findings of fact unless clearly erroneous, but owe no such deference to its conclusions of law which we apply independently to the facts." *State v. Harris*, 301 Ga. 234, 237 (2) (799 SE2d 801) (2017) (citation and punctuation omitted).

1. In this case, we affirm the trial court's conclusion that the State did not meet its burden under *Kastigar* of proving that it did not make derivative use of Ward's *Garrity*-protected statements.

As the State's presentation at the post-remand *Kastigar* hearing makes clear, the prosecutors in this case were unaware of their burden not to use any information they learned from the *Garrity*-protected statements to influence their investigation or

8

trial preparation. For example, Brooks testified that during her preparation for Ward's trial, while she understood that the contents of Ward's interview were inadmissible, she did not understand her duty under *Kastigar* not to make derivative use of the interview. Prosecutor Yalamanchili testified similarly as to her understanding of the issues. Thus, the prosecutors did not make an effort to quarantine the information to ensure their investigation was not tainted by the protected statements.

Further, although Brooks stated throughout the *Kastigar* hearing that her preparation for trial and questioning of the trial witnesses was based on information other than what she learned from her review of Ward's *Garrity*-protected statements, those denials are legally insufficient. As we stated in our previous opinion, "neither speculation nor conclusory denials of use or derivative use by government officials will substitute for the affirmative showing of an independent source required for each and every item of evidence presented to the jury." *Ward*, 353 Ga. App. at 13 (3) (punctuation omitted) (citing *Hampton*, 775 F2d at 1489).

Further, information from Ward's protected statements were raised at trial with no independent basis being presented to the jury. For example, at trial, Brooks cross-examined Ward about the fact that the song "Black and Yellow" was "[his] song with [G. W.]." This fact was revealed in Ward's termination letter, because Ward had

9

mentioned it in his internal investigative interview with Saulters. When asked at the *Kastigar* hearing how she learned about the song, Brooks stated that she heard it from G. W. in a pretrial interview, but conceded that no one had testified about it prior to her cross-examining Ward. Thus, aside from Brooks's self-serving statements about the source for this question, there is nothing to prove that Brooks did not learn of this specific song shared by Ward and G. W. from his *Garrity*-protected statements.

Without some evidence (beyond the prosecutors' mere denials) that the State did not use the protected statements to gather additional evidence or shape the questioning of trial witnesses, we cannot say that the trial court erred in finding that the State did not meet its *Kastigar* burden in this case. See *Hampton*, 775 F2d at 1490 (*Kastigar* generally requires "a showing that prosecuting officials and their agents were aware of the immunity problem and followed reliable procedures for segregating the immunized testimony and its fruits from officials pursuing any subsequent investigations").[2]

---

[2] In preparing for the *Kastigar* hearing, the State created a chart explaining independent sources of information for many of the statements made by Ward in his internal affairs interview. However, this exhibit was created after Ward's trial was complete and after Ward raised his *Kastigar* claim, putting the State on notice that it would have to show independent sources for the evidence presented at trial. So while the exhibit shows that there were possible independent sources for these facts, it relies solely on the State witnesses' denials of derivative use to show that these were in fact

Additionally, the State called only three trial witnesses at the *Kastigar* hearing, so we do not know whether other trial witnesses obtained Ward's *Garrity*-protected statements. And we know that other trial witnesses were aware of the internal affairs investigation. For example, Brooks testified that she discussed the internal affairs investigation with the victim's mother, M. K., before trial. Although Brooks did not believe she had discussed the contents of the interview with M. K., M. K. was not called as a witness at the *Kastigar* hearing and thus the State failed to prove that she did not seek access to the interview and use its contents to influence her testimony at Ward's trial. Although we do not pronounce that the State must call every trial witness to meet its burden under *Kastigar*, in this case, the State's failure to call additional witnesses greatly weakened its ability to show that Ward's trial was not tainted by derivative use of his protected statements.

Finally, Brooks admitted at the *Kastigar* hearing that Saulters's opinion of Ward's truthfulness was likely influenced by statements made by Ward during the *Garrity*-protected interview, and yet the State elicited this testimony from Saulters on rebuttal anyway. Saulters further confirmed that he had informed the prosecutors that

---

the sources for such information. Had the prosecutors retained their trial preparation notes, or shown an effort to quarantine information contained in the investigative file, this exhibit could have been more useful for the State's denial of derivative use.

11

his opinion of Ward's truthfulness was influenced by the *Garrity*-protected interview. This testimony provides a concrete example of trial evidence that was in fact influenced by Ward's protected statements.

Thus, for all of these reasons, we agree with the trial court that the State failed to meet its burden under *Kastigar* to prove by a preponderance of the evidence that it did not make derivative use of Ward's *Garrity*-protected statements.

2. The State contends that any prohibited derivative use made by the State was not significant enough to contribute to the verdict, and thus does not warrant a new trial. See *Ensslin v. State*, 308 Ga. 462, 471 (2) (d) (841 SE2d 676) (2020) ("Even an error of constitutional magnitude, however, may be deemed harmless if the State can prove beyond a reasonable doubt that the error did not contribute to the verdict, such as when the evidence at issue is cumulative of other properly-admitted evidence or when the evidence against the defendant is overwhelming.") (citation and punctuation omitted). Specifically, the State argues that the testimony from Saulters was: (1) cumulative of other evidence, and (2) brief, with minimum impact on the jury. The State also argues that the evidence against Ward was overwhelming, such that he would have been found guilty without Saulters's testimony. Given the facts of this

12

case (including the potentially widespread use of *Garrity*-protected statements) and prevailing law, we are unpersuaded by the State's arguments.

We agree with the trial court that, because Ward testified and denied the charges, his truthfulness was central to his defense. See *Butler v. State*, 309 Ga. 755, 761 (2) (c) (848 SE2d 97) (2020) (where a criminal defendant testifies, "his credibility [is] certainly a key issue"); *Granger v. State*, 320 Ga. App. 580, 582 (1) (740 SE2d 313) (2013) (it is often the case in sexual offense cases that the victim's and the defendant's credibility are at issue). Although brief, Saulters's rebuttal testimony, stating that he would not believe Ward under oath, went directly to this central issue. Additionally, the jurors heard that Saulters was a high-ranking police officer who had investigated these claims against Ward, making him a compelling witness.

If the foregoing were the extent of the use of *Garrity*-protected statements, the State's arguments would be more compelling. But significantly and as described above, the State failed to call many of the trial witnesses at the *Kastigar* hearing and the prosecutors did not testify clearly as to how the *Garrity*-protected statements may or may not have influenced their trial preparation. Thus, the State did not carry its burden of showing that other parts of Ward's trial were not inappropriately influenced

13

by his protected statements. Under these circumstances, we cannot say that Ward's *Garrity*-protected statements did not have an effect on the verdict.

3. The State next argues that the trial court erred in finding trial counsel's performance to be deficient, particularly based on the novelty of Ward's *Garrity*/*Kastigar* claim. We disagree.

To prevail on a claim of ineffective assistance of counsel, Ward must prove both that his lawyer's performance was deficient and that he suffered prejudice as a result of this deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). Generally, "trial counsel's performance cannot be deemed deficient for not raising an unsettled question of law." *Eller v. State*, 303 Ga. 373, 383 (IV) (C) (811 SE2d 299) (2018) (citation and punctuation omitted), overruled in part by *Lester v. State*, 310 Ga. 81 (849 SE2d 425) (2020). As we stated in our previous opinion, "whether an impermissible derivative use occurs when a prosecutor possesses or has access to a defendant's compelled statements during trial preparation is an issue of first impression under Georgia jurisprudence." *Ward*, 353 Ga. App. at 14 (3) n. 10. However, the novel issue at hand was limited to whether "the State's mere possession of the compelled statements for use in its trial preparations constituted a prohibited derivative use." Id.

14

Ward's claim in his motion for new trial and in his previous appeal went beyond the argument that trial counsel was ineffective for failing to object to the State's mere possession of the investigative file. Ward claimed also that trial counsel was ineffective for failing to object to the prosecution's derivative use of his *Garrity*-protected statements, pointing out specific evidence which he believed to have been impermissibly influenced by the prosecution's access to his internal affairs interview.

Although not a common issue of law arising in Georgia jurisprudence, our Supreme Court had acknowledged *Kastigar*'s prohibition on derivative use of compelled statements prior to Ward's trial. See *Muhammed*, 282 Ga. at 250 (3) (citing *Kastigar* and stating that "the prosecution should not be free to build up a criminal case, in whole or in part, with the assistance of enforced disclosures by the accused"). See also *Dampier v. State*, 249 Ga. 299, 301 (290 SE2d 431) (1982) (recognizing that the prosecution has the burden of proving that all evidence to be presented at a criminal trial comes from sources other than a defendant's compelled testimony). And, as a United States Supreme Court case, *Kastigar* itself is precedent that a criminal defense lawyer is expected to have knowledge of and use in defense of his clients. Thus, we conclude that this was not an unsettled question of law absolving trial counsel of the responsibility to raise this issue.

15

We also agree with the trial court that counsel's performance in this case was deficient. At the motion for new trial hearing, trial counsel explained that, although he knew that the State would not be able to admit Ward's internal affairs interview, he "did not remember thinking [the prosecutors] shouldn't have [the investigative file] in their file at all." Thus, it was not a strategic decision not to follow up on the potential problem with the prosecution's possession of the investigative file, it was merely an ignorance or overlooking of the issue by trial counsel. See *Pierce v. State*, 286 Ga. 194, 198 (4) (686 SE2d 656) (2009) (where trial counsel forgot to raise objection, failure to object was not a strategic decision). And, under *Kastigar* and *Muhammed*, it was not reasonable for counsel to ignore the issue. Thus, we affirm the trial court's finding that trial counsel performed deficiently.

4. Finally, the State argues that Ward failed to show prejudice for his ineffective assistance claim. As explained in Division 2, we agree with the trial court that there is a reasonable probability that the State's derivative use contributed to the verdict in Ward's trial. Consequently, Ward was prejudiced by counsel's failure to raise the issue. See *Bryant v. State*, 301 Ga. 617, 620-622 (2) (800 SE2d 537) (2017) (defendant was prejudiced by trial counsel's failure to seek exclusion of evidence that violated his Fourth Amendment rights; defendant was entitled to new trial).

16

For all of these reasons, we affirm the order of the trial court granting Ward a new trial.

*Judgment affirmed. Barnes, P. J., and Markle, J., concur*.