NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: June 1, 2022

S22A0414.  HARRIS v. THE STATE.

PETERSON, Justice.

Quantavious Harris appeals his convictions for felony murder and other charges stemming from the 2009 shooting death of Stephen Anim.[1] This is his case's second appearance at this Court.

---

[1] The crimes were committed on April 22, 2009. On August 14, 2009, a Fulton County grand jury indicted Harris, along with Samuel Ellis, on charges of malice murder, felony murder predicated on aggravated assault, aggravated assault, attempted armed robbery, and possession of a firearm during the commission of a felony. Harris was tried separately from Ellis in September 2011. The jury found Harris not guilty of malice murder, but guilty of all other charges. The trial court sentenced Harris to serve life in prison for felony murder, plus five years for attempted armed robbery consecutive to the felony murder sentence and five years for the firearm count consecutive to the attempted armed robbery sentence. (Ellis was convicted of malice murder and other crimes at a separate May 2012 jury trial, receiving a life sentence for murder and probation for other counts; we affirmed his convictions and sentences. See *Ellis v. State*, 299 Ga. 645 (791 SE2d 16) (2016).) Harris filed a motion for new trial on September 16, 2011; the motion was amended by new counsel on February 17, 2015. After an evidentiary hearing, the trial court granted the motion on May 5, 2015. On the State's appeal, this Court reversed that ruling in May 2017, remanding for consideration of the remaining grounds in Harris's motion for new trial. See *State v. Harris*, 301 Ga. 234 (799 SE2d

The trial court previously granted Harris's motion for new trial on the ground that his trial counsel had provided ineffective assistance in failing to move to suppress certain text messages, but we reversed. See *State v. Harris*, 301 Ga. 234 (799 SE2d 801) (2017). Following remand for consideration of other issues raised in Harris's motion for new trial, Harris raised additional, new grounds for his motion. The trial court addressed all of the issues presented and denied the motion.

Harris now appeals and raises a host of alleged errors by the court at trial: (1) failing to stop the State from making improper remarks in its closing argument; (2) instructing jurors that they could be "influenced" by the notes of other jurors; (3) admitting hearsay in the form of text messages that were insufficiently authenticated; and (4) admitting evidence of his involvement in a separate armed robbery. He also alleges instances of ineffective

---

801) (2017). Following another evidentiary hearing, the trial court denied the motion for new trial on October 1, 2021. Harris filed a notice of appeal on October 29, 2021, and an amended notice of appeal on November 1, 2021. His case was docketed to this Court's April 2022 term and submitted for a decision on the briefs.

assistance of trial counsel. Finally, he contends that the trial court should have granted him a new trial based on newly discovered evidence. The State argues that claims of trial court error and trial counsel ineffectiveness that were not raised prior to our previous remand are untimely. We agree that none of these claims were properly within the scope of what the trial court was authorized to consider on remand, and thus the trial court should not have considered them. Accordingly, the ineffective assistance of counsel claims are waived. Additionally, Harris's newly discovered evidence claim was not properly raised before the trial court and thus leaves us nothing to review. But Harris's claims of error by the trial court at trial were not required to have been raised in the motion for new trial in order for this Court to consider them now. Addressing those claims, we conclude that (1) the claim about the State's closing argument was not preserved due to Harris's failure to object at trial, (2) the trial court did not plainly err in instructing jurors about the use of their notes, (3) any abuse of discretion in admitting the text messages was harmless, and (4) the trial court did not abuse its

3

discretion in admitting the similar-transaction evidence.[2]

The evidence from Harris's September 2011 trial was recounted in the first appeal and included the following.

> [P]rior to his death, in the late evening of April 21, 2009, the victim, Stephen Anim, was in his taxicab at the H.E. Holmes MARTA station waiting for potential passengers. Also there were Harris and his friend [Samuel] Ellis[,] who approached another taxi driver and asked for a ride. The driver testified that the men were acting odd, even providing him with different destinations. Evidence was presented at trial that neither of the requested destinations provided to the first driver was where Harris or Ellis resided nor the location where the crime eventually occurred. After the first driver denied the men passage, they approached the victim's cab and requested to be taken to Big Bethel Village, a retirement community where, again, neither Harris nor Ellis resided. However, the evidence showed that the neighborhood where Ellis was staying with Harris' mother and younger brother was walking distance from Big Bethel Village via an inconspicuous cut-through.

Approximately an hour later, Anim was found in the

---

[2] Harris also argues in a motion and in his appellate briefing that we should remand this case for the trial court to consider evidence of a putative post-sentencing plea deal on which the State has attempted to renege. But Harris has not cited any relevant authority that would require the trial court to withdraw its ruling on the motion for new trial and rule on the motion to enforce the alleged plea deal. And a ruling on the motion to enforce the putative deal does not appear to be necessary to deciding the appeal before us. Cf. *Erickson v. Hodges*, 257 Ga. App. 144, 146 (570 SE2d 420) (2002) (remanding after finding that the trial court's summary judgment ruling was premature, given pending discovery). The motion to remand is therefore denied.

4

driver's seat of his taxicab sitting outside Big Bethel Village in Fulton County, Georgia. He had suffered a single gunshot wound to the back of his head, which was determined to be his cause of death. A .380 cartridge casing was recovered from the front passenger's side floor of the taxi and a GPS unit and $700 were missing from the cab.

*Harris*, 301 Ga. at 238-239 (2).

In a subsequent interview, Harris misled detectives regarding his relationship with Ellis, gave conflicting statements, and made various admissions, including that he sat behind the victim in his taxicab immediately prior to his death and fled from the scene with Ellis after Ellis shot the victim. See *Harris*, 301 Ga. at 239 (2). Harris was later identified by photo lineup and in a surveillance video recording as being at the H.E. Holmes MARTA station with Ellis. See id. Cell phone tower data contradicted portions of the timeline of events Harris provided to the police in his interview. See id.

The State introduced a series of text messages sent on April 21 and 22, 2009, to and from a phone number associated with Harris, including messages sent from the number on the night of the murder

indicating that the sender was about to rob and kill someone. The jury also heard evidence that Harris had committed an armed robbery and aggravated assault of a pizza delivery man seven months prior to Anim's shooting. See *Harris*, 301 Ga. at 239 (2).

Following the trial court's entry of judgment based on the jury's verdicts, Harris filed a timely motion for new trial through trial counsel and amended the motion through new counsel more than three years later, in February 2015. The initial one-page motion raised only claims that the verdicts were contrary to the law and the evidence and strongly against the weight of the evidence, that the court erred in admitting hearsay, and that the court made unspecified errors in its charge to the jury. The amended motion added only claims of a merger error and that trial counsel had provided ineffective assistance in failing to move to suppress the text messages on the ground that they had been obtained without the necessary warrants. Following an evidentiary hearing, the trial court granted the motion in May 2015 on the ground of ineffective assistance of counsel and concluded that, given this ruling, it need

not consider the remaining issues raised by Harris.

The State appealed, and in May 2017 we reversed. We concluded that, although the evidence against Harris was not overwhelming, there was not a reasonable probability that the outcome of the trial would have been different without the introduction of the text messages. We remanded the case "with direction that the trial court consider the remaining grounds in Harris' motion for new trial." *Harris*, 301 Ga. at 240 (2).

In January 2018, on remand, the trial court entered an order prepared by defense counsel "adopt[ing] the remittitur" of this Court and merging the attempted armed robbery count into Harris's felony murder conviction. Nearly three years later, in December 2020, Harris filed through new counsel what was styled a "Motion for Ruling on Defendant's Pending Motion for New Trial or in the Alternative Motion for Out-of-Time Motion for New Trial."[3] The motion sought an evidentiary hearing on the pending motion for new

---

[3] The trial court did not treat the motion as seeking any out-of-time relief that might implicate our recent holding in *Cook v. State*, 2022 WL 779746, 2022 Ga. LEXIS 65 (Case No. S21A1270, decided Mar. 15, 2022).

trial, requested additional time to "investigate additional grounds and supplement [the] motion" before the hearing, and asserted ineffective assistance of prior appellate counsel. Harris later filed a brief in support of his request for a hearing that also asserted new grounds for a new trial, including additional instances of ineffective assistance of trial counsel, claims of trial court error, and a claim of newly discovered evidence of innocence. Following an evidentiary hearing in August 2021, the trial court entered an order denying the motion for new trial, addressing the claims of error raised for the first time on remand. Harris now appeals.

1.   The State argues generally that Harris's claims of error by the trial court at trial and claims of ineffective assistance of trial counsel are not properly before this Court because they were not raised in Harris's motion for new trial prior to remand. We agree with the State that the trial court should not have considered these claims. We also conclude that the trial court should not have considered Harris's claim for a new trial based on newly discovered evidence. But Harris's failure to raise the claims of trial court error

8

in a motion for new trial prior to remand does not preclude *this* Court from considering those claims.

Our previous decision directed the trial court to "consider the remaining grounds in Harris's motion for new trial." *Harris*, 301 Ga. at 236-240 (2). OCGA § 5-6-10 provides that, upon remittitur of an appellate court decision to the trial court, "[t]he decision and direction shall be respected and carried into full effect in good faith by the court below." Given our direction in remanding the case, this principle limited the trial court to considering the already raised claims that remained undecided; "[f]or an appellate court to authorize further action by the trial court requires a clear direction, whether express or by necessary implication." *State v. Jackson*, 295 Ga. 825, 828 (764 SE2d 395) (2014) (reversing the trial court's grant of a motion for new trial post-remand on a ground that had been abandoned prior to the original ruling on the motion for new trial); see also *Akins v. State*, 237 Ga. 826 (229 SE2d 645) (1976) (the trial court properly refused to consider a motion for new trial filed after this Court reversed the appellant's death sentence as

9

unconstitutional with direction to enter a life sentence). This limitation on the trial court's power was jurisdictional. See *Jackson*, 295 Ga. at 827 (upon remittitur of this Court's decision to the trial court, "the lower court had no jurisdiction to entertain a newly filed motion for new trial seeking to assert grounds that [the appellant] had affirmatively waived and abandoned," because such action was not clearly authorized by this Court's opinion (citation and punctuation omitted)).

Harris generally does not dispute that he failed to raise the claims at issue prior to remand. Rather, he argues that the nature of the Court's remand meant that his motion for new trial was once again pending. He correctly observes that generally a motion for new trial "may be amended any time on or before the ruling thereon." OCGA § 5-5-40 (b). And he attempts to distinguish *Jackson* on the basis that in that case, there was no direction in this Court's opinion for the trial court to take *any* further action. See 295 Ga. at 826-827 ("By reversing the trial court's order granting new trial on the sole ground ultimately pursued by Jackson, this Court's previous opinion

effectively held that the trial court should have denied the motion for new trial."). But although it is true that here, unlike in *Jackson*, the remand authorized the trial court to take further action on the case, that authorization was not unlimited. Here, this Court remanded the case "with direction that the trial court consider *the remaining grounds* in Harris' motion for new trial." *Harris*, 301 Ga. at 240 (2) (emphasis added). The trial court's authorization was limited to resolving "the" remaining grounds raised by Harris that the court previously had found it unnecessary to consider due to its ruling that Harris had received ineffective assistance of counsel in one particular respect. That authorization did not include considering whatever new grounds in support of his motion for new trial that Harris might also raise on remand. None of the claims that Harris raises now on appeal — including claims of error by the trial court at trial, claims of ineffective assistance of trial counsel, and a claim for a new trial based on newly discovered evidence, as well as a related evidentiary claim — were raised before the trial court prior to remand. By considering those new claims of error in support of

11

Harris's motion for new trial, the trial court exceeded the scope of its jurisdiction on remand.

With respect to Harris's claims of ineffective assistance of counsel, Harris's failure to present them to the trial court means that they are waived. See *Williamson v. State*, 305 Ga. 889, 897 (4) (827 SE2d 857) (2019) (claims of ineffective assistance of counsel not raised at the earliest practicable moment are waived). They were not raised prior to the State's initial appeal, even though they could have been, given that Harris had new counsel when he amended his motion for new trial in February 2015. And the trial court was without jurisdiction to consider his claims of ineffective assistance of counsel when he raised them after remand. Thus, we cannot consider them here.

We cannot consider Harris's claim for a new trial based on newly discovered evidence, either. An appellate court's consideration of such a claim is dependent upon a trial court's having first considered the evidence and made particular findings of fact, something the trial court lacked jurisdiction to do here given

12

the limited scope of its authority on remand. See *State v. Gates*, 308 Ga. 238, 250 (3) (840 SE2d 437) (2020) (trial court's factual findings under *Timberlake v. State*, 246 Ga. 488 (271 SE2d 792) (1980), in considering a request for new trial based on a claim of newly discovered evidence, are reviewed for clear error, and its ultimate ruling is reviewed for abuse of discretion); *Drane v. State*, 291 Ga. 298, 303-304 (3) (a) (728 SE2d 679) (2012) (noting that this Court might have remanded the case for a clear finding on a *Timberlake* factor "[w]ere there not an independently-sufficient basis" for it to affirm the denial of a new trial based on newly discovered evidence).[4]

---

[4] Under some circumstances, newly discovered evidence may authorize the grant of an extraordinary motion for new trial, which is exempt from the rule requiring motions for new trial to be filed within 30 days of the entry of the judgment. See *Mitchum v. State*, 306 Ga. 878, 880-882 (1) (a) (834 SE2d 65) (2019); OCGA § 5-5-40 (a). But Harris did not frame his claim before the trial court as an extraordinary motion, raising the issue in what he styled a "Brief in Support of Further Evidentiary Hearing on Amended Motion for New Trial" and asking the trial court to "exercise its authority as the thirteenth juror and reverse his conviction." Nor did he attempt to show to the trial court a good reason why he did not seek relief on his claim of newly discovered evidence sooner. In a subsequent brief filed with the trial court, Harris insisted that although he *would* be able to make the required showing in support of an extraordinary motion were he to file one in the future, outlining briefly how he would be able to satisfy the *Timberlake* factors, "he [was] not currently at the extraordinary motion for new trial stage and, therefore, does not need to make an extraordinary motion for new trial showing." And in his brief before this

And Harris discusses this enumeration of error only in terms of error by the trial court in denying the motion for new trial, not in terms of any particular error at trial.

But the limited scope of what was properly before the trial court on remand does not mean that *this* Court is foreclosed from considering Harris's claims about error by the trial court at trial. OCGA § 5-5-40 (g) makes it plain that "[o]n appeal, a party shall not be limited to the grounds urged in the motion [for new trial] or any amendment thereof." Harris's failure to raise claims in his motion for new trial does not preclude him from raising claims of trial court error at trial now. Unlike Harris's claim based on newly discovered evidence, he frames these claims in terms of error at trial, not in terms of error in denying the motion for new trial. Although this Court generally lacks jurisdiction to consider a party's second direct

---

Court, he again disclaims having raised his claim in an extraordinary motion, saying that "[t]o the extent that this claim is more properly raised in an extraordinary motion for new trial, [he] will pursue this claim if he is not ultimately successful on this appeal." We are particularly reticent to construe Harris's claim as being raised in an extraordinary motion for new trial given that "only one such extraordinary motion shall be made or allowed." OCGA § 5-5-41 (b).

14

appeal, see *Hall v. State*, 304 Ga. 281, 284-285 (818 SE2d 527) (2018), the prior appeal in this case was brought by the State after Harris was granted a new trial; this appeal is his first opportunity to raise claims of trial court error at trial before this Court. We thus proceed to consider those claims of error.

2. Harris first argues that the trial court plainly erred in failing to "stop" what he claims was an improper closing argument by the State. In particular, the prosecutor stated that, "with each piece of evidence," Harris "sits here stripped naked of th[e] presumption of innocence because the presumption don't protect you from the truth[.]" This issue is not preserved for review, as Harris did not object at trial to the prosecutor's remarks. See *Moon v. State*, 311 Ga. 421, 426 (4) (858 SE2d 18) (2021) ("[W]e do not review unpreserved challenges to closing arguments in non-death penalty cases, even for plain error.").

3. Next, Harris argues that the trial court plainly erred in instructing the jurors that they could be "influenced" by each other's notes. We disagree.

15

During its preliminary instructions to the jury, the trial court told the jurors, "You can certainly be influenced or your memory refreshed by yours or somebody else's notes, but your own recollection at the end of the day of what the evidence was is what you should look to and weigh in your deliberations." Harris did not object to this instruction at trial, so we review it only for plain error affecting his substantial rights. See *Terry v. State*, 291 Ga. 508, 509 (2) (731 SE2d 669) (2012). To constitute plain error, an error in a jury instruction must have been obvious, among other things. See id.

Any error in the trial court's instructions to the jurors about their use of other jurors' notes was not obvious, particularly given that the instruction as a whole informed the jurors that their own individual recollections of the evidence must ultimately control. See *Hill v. State*, 310 Ga. 180, 187-188 (4) (850 SE2d 110) (2020) (no deficient performance in failing to object to instruction that told jurors they "may consider another juror's notes to refresh your memory," because "[v]iewing the instructions as a whole, the trial

16

court did not instruct the jurors to rely on each other's notes").

4. Harris also argues that the trial court abused its discretion in admitting the text messages sent to and from a phone number associated with him. We conclude that any abuse of discretion in admitting the messages was harmless.

The State presented text messages sent to and from a phone number associated with Harris, through the testimony of a cell phone company representative. Harris objected on authentication, foundation, and hearsay grounds, suggesting that a party to the conversations had to testify as to the identity of the participants. The trial court admitted the messages, apparently under the business records exception to the hearsay rule.

On appeal, Harris discusses in particular eight of the text messages that were admitted at trial: four sent from the number associated with him and four sent to that number. The State appears to defend admission of the text message sent from the number in question on the basis that they constituted admissions by Harris and

thus were exempt from the hearsay rule.[5] And the State argues that to the extent that any of the messages sent to the number in question were inadmissible hearsay, their admission was harmless. But Harris argues that the State never established that the account for the number belonged to him with "enough certainty to justify the admission of this hearsay as an admission by a party opponent." And he argues that the text messages sent to that number were neither necessary to provide context nor harmless.

Because this case was tried before the 2013 effective date of our current Evidence Code, the old Evidence Code applies. No one rule of evidence in the old code governed authentication. See Ronald L. Carlson & Michael Scott Carlson, Carlson on Evidence 563 (7th ed. 2021). But the general rule under the old and current codes is that "documents from electronic sources . . . are subject to the same rules of authentication as other more traditional documentary evidence and may be authenticated through circumstantial evidence."

---

[5] The Attorney General in his brief here cites former OCGA 24-3-31, which provided that, with some exceptions, an "admission by a party to the record shall be admissible in evidence when offered by the other side[.]"

*Blackledge v. State*, 299 Ga. 385, 390-391 (4) (788 SE2d 353) (2016) (citation and punctuation omitted); see also *Burgess v. State*, 292 Ga. 821, 823-824 (4) (742 SE2d 464) (2013) (holding circumstantial evidence was sufficient to authenticate a document from an electronic source).

For electronic communications like text messages, there are often two levels of authentication required: that a particular digital device generated a particular communication, and that a particular person was using the device at the time. See *Pierce v. State*, 302 Ga. 389, 395-396 (2) (a) (807 SE2d 425) (2017); see also Carlson on Evidence 572 ("Generally, the foundation for the admissibility of text messages has been held to comprise two components: (1) whether the text messages were accurately transcribed; and (2) the identity of who actually sent the text messages."). As with other evidentiary rulings, a trial court's decision to admit a document over an authentication objection is reviewed for an abuse of discretion. See *Blackledge*, 299 Ga. at 391 (4).

Here, the only issue that Harris disputes is whether there was

19

sufficient proof that he used the number in question. There was indeed sufficient circumstantial evidence to support a conclusion that Harris used the number and sent the texts in question. A detective testified that the number belonged to Harris, although he did not testify how he knew that. The Metro PCS representative testified that the name "Quan Woodard" was listed for the account associated with that number, but that the company did not require customer identification when an account was opened, as customers pay by the month and no bills are sent. There was testimony that Harris went by the nickname "Quan." The Metro PCS records show that on the day of the shooting, Harris's number exchanged "I love you" text messages with an account belonging to the maternal grandmother of Harris's child[6] and also received text messages from an account belonging to Harris's mother. Although the Metro PCS records show that occasionally someone sent text messages from the number while identifying the sender as "Handyman" (Ellis's

---

[6] In our prior opinion, we said the texts from the account belonging to the maternal grandmother were sent by her daughter, the mother of Harris's child and his off-and-on-again girlfriend. See *Harris*, 301 Ga. at 235 (1) n.6.

nickname), none of those messages was among the obviously incriminating messages outlined in Harris's brief here. And several other messages sent to the account, although not any of those focused on by the parties here, were addressed to "Quan." The evidence associating Harris with the phone number in question was sufficient to allow the admission of the texts sent by that number for the jury's consideration. See *Hull v. State*, 265 Ga. 757, 760-761 (6) (462 SE2d 596) (1995) (ostensible notes between defendant and the victim "were properly authenticated by the introduction of other writings for comparison *by the jury* and by circumstantial evidence" (emphasis supplied)), overruled on other grounds by *Wall v. State*, 269 Ga. 506, 509 (2) (500 SE2d 904) (1998).

To the extent that some of the admitted messages sent to or from Harris's phone were not admissions by Harris and contained assertions of fact such that they should have been excluded by the hearsay rule,[7] their admission was harmless. The State may avoid

---

[7] "[A]n utterance [that] is merely a part of the surrounding circumstances of an occurrence" is "not offered to prove the fact asserted in the statement.

21

reversal based on a nonconstitutional error by showing that it is highly probable that the error did not contribute to the verdicts. See *Bannister v. State*, 306 Ga. 289, 301 (5) (b) (830 SE2d 79) (2019). As noted above, we concluded in our prior opinion in this case that any deficient performance by counsel in failing to object to *any* of the text messages on the ground that the necessary warrants were not obtained did not create a reasonable probability of a different outcome at trial, given the State's limited use of the texts and the general strength of the State's case. See *Harris*, 301 Ga. at 240 (2).[8] If all of the text messages put together, including the ones in which Harris appeared to acknowledge his plans to rob and kill someone,

---

Proof of such statements is original evidence; it is not an exception to hearsay." *Bundrage v. State*, 265 Ga. 813, 814 (2) (462 SE2d 719) (1995) (citation and punctuation omitted).

[8] We made that determination under a standard different than the one that we would apply in considering whether a nonconstitutional error by the trial court were harmless, which requires the State to show that it is highly probable that the error did not contribute to the verdict. See *State v. Lane*, 308 Ga. 10, 21 (4) (838 SE2d 808) (2020) (comparing standard for prejudice from deficient performance by counsel with standard for nonconstitutional harmless error). But given our affirmative conclusion that the incriminating text messages sent from Harris's number were not erroneously admitted, we need not rely on the overall strength of the State's case without those messages in determining whether admission of the other messages was harmless error.

did not create a reasonable probability of a different outcome at trial, it is highly probable that a less-incriminating subset of those messages, sent by persons other than Harris, did not contribute to the jury's verdict. Any messages that were erroneously admitted were harmless in the light of the properly admitted text messages in which Harris appeared to acknowledge his plans to rob and kill someone. See *Felder v. State*, 270 Ga. 641, 646 (8) (514 SE2d 416) (1999) (erroneous admission of hearsay was harmless where jury also heard much more inculpatory evidence in the form of defendant's own admission).

5.    In another claim of evidentiary error, Harris argues that the trial court erred by admitting evidence that he was involved in a prior armed robbery and aggravated assault of a pizza delivery man.[9] We conclude that the trial court did not abuse its discretion in admitting this evidence.

---

[9] At a pretrial hearing on the similar transaction evidence, the State represented that an indictment of Harris for this incident was "open"; a brief filed by Harris shortly after that hearing stated that he was still under indictment on charges of armed robbery and aggravated assault in that matter.

Under the old Evidence Code, evidence of similar crimes or transactions was admissible for a variety of purposes, including to show knowledge, common design, modus operandi, motive, intent, good or bad faith, bent of mind, plan, scheme, course of conduct, identity, or other matters dependent upon a person's state of mind. See *Norman v. State,* 303 Ga. 635, 639 (3) (814 SE2d 401) (2018). To be admissible, the trial court first had to determine that the State had shown that: (1) the evidence was admissible for a proper purpose; (2) there was sufficient evidence that the accused committed the acts in question; and (3) there was sufficient connection or similarity between the independent offenses or acts and the crime charged. See *Pareja v. State*, 286 Ga. 117, 119 (686 SE2d 232) (2009). "Ultimately, these guidelines and restrictions present[ed] the mechanism by which [the trial court could] determine whether the probative value of the similar transaction evidence outweigh[ed] its prejudicial impact upon the defendant."

Id.[10] We review the trial court's factual findings as to whether the State satisfied the three-prong test stated above only for clear error, and we review the ultimate decision to admit the evidence for an abuse of discretion. See *Reed v. State*, 291 Ga. 10, 13-14 (3) (727 SE2d 112) (2012).

Here, the trial court determined in a pretrial order that the evidence of the prior armed robbery and aggravated assault of the delivery man was admissible to show "course of conduct, motive, intent and lack of mistake[.]" The court also found that the State had presented sufficient evidence that Harris committed the prior acts and that there was sufficient similarity between the prior acts and the charges in this case. The court gave a limiting instruction regarding the evidence at trial.

On appeal, Harris explicitly challenges the State's ability to

---

[10] "Prior to the enactment of the new [E]vidence [C]ode, Georgia had no direct statutory equivalent to [Federal] Rule [of Evidence] 403, but case law on the issue generally required that a trial court merely balance the probative value of evidence with its prejudicial effect without requiring that the objecting party establish substantial prejudice." *Williams v. State*, 328 Ga. App. 876, 879 (1) & n.12 (763 SE2d 261) (2014) (citing a Georgia evidence treatise and Georgia Court of Appeals case law).

satisfy only the requirements that there was sufficient evidence that he committed the prior acts and that they were sufficiently similar to the charged crimes; he does not argue that the evidence was not relevant for a proper purpose, although he also argues that its prejudicial effect "outweighed any minimal probative value this evidence actually had[.]" Indeed, because the prior incident also involved an armed robbery and aggravated assault, the evidence was relevant to show that Harris had the requisite intent to commit attempted armed robbery and aggravated assault, some of the offenses charged here. See OCGA § 16-4-1 (1968) (offense of criminal attempt includes element that the person have intent to commit the specific crime); *Lucky v. State*, 286 Ga. 478, 482 (2) (689 SE2d 825) (2010) (intent to rob is element of armed robbery).

We conclude that there was sufficient evidence for the trial court to have determined that Harris committed the prior acts. A detective testified in a pretrial hearing and at Harris's trial in this case that the pizza delivery man had identified Harris as one of the two people who assaulted and robbed him. The detective specified in

26

the pretrial hearing that the victim had identified Harris as the one who had brandished a gun. In his pretrial and trial testimony, Harris's co-defendant in the prosecution stemming from the incident tried to downplay Harris's involvement, and claimed at the pretrial hearing that neither man had a gun. But another witness testified at trial that she saw Harris running from the scene of the earlier crime with the other assailant. And the detective testified pretrial and at trial that he found Harris hiding with the co-defendant in an apartment where multiple guns were located. The detective testified that the co-defendant identified one of the guns as having been used in the assault on the delivery man. When confronted by police, Harris acknowledged being present for the incident but claimed he merely picked up money off the ground.

In considering the strength of the State's case here in the prior appeal, we noted several similarities between this case and the robbery of the pizza delivery man:

> This prior armed robbery involved a co-defendant, a .380 caliber handgun, and a physical attack on the victim. Moreover, after committing that crime, Harris and his co-

27

> defendant fled from the scene on foot, hid from police and, when they were eventually caught, Harris claimed mere presence and blamed the entire crime on his counterpart — the same theory Harris presented to the jury in this case.

*Harris*, 301 Ga. at 239 (2).

As for the ultimate balancing of whether the probative value of the similar transaction evidence outweighed its prejudicial impact, the evidence had particular probative value in that Harris claimed that he was merely present for the shooting, had no idea what Ellis was planning, and did not intend to rob Anim. See *Thomas v. State*, 239 Ga. 734, 738-739 (5) (238 SE2d 888) (1977) (prior shooting was relevant to rebut defendant's "contended innocent intention" of self-defense); *Hargrove v. State*, 202 Ga. App. 854, 856 (1) (415 SE2d 708) (1992) (prior armed robberies were relevant for showing intent because they "tended to eliminate the possibility that [the defendant] was not a participant in the [armed robbery of a bar] but merely a patron in the bar"); cf. *Hood v. State*, 309 Ga. 493, 501 (2) (847 SE2d 172) (2020) (under current Evidence Code, other-acts evidence had high probative value where appellant's defense was

that she was not aware that others planned to rob the victims and had no intent to participate in the crimes with them). We conclude that the trial court did not abuse its discretion in admitting evidence of the similar transaction.[11]

*Judgment affirmed. All the Justices concur.*

---

[11] Harris also alleges that the cumulative harm of the trial court's errors and cumulative prejudicial effect of trial counsel's deficient performance require reversal. See *Lane*, 308 Ga. at 14 (1). But we have concluded that Harris's claims of ineffective assistance of counsel are waived. Of the claims of trial court error at trial that he raises, we conclude that only one of those has any possible merit, and any error was harmless. That possible error involves the same evidence — text messages — as to which we pretermitted the issue of deficient performance in our prior opinion in this case. Thus, there is nothing to consider cumulatively with the harm from the text messages, and this claim fails.