307 Ga. 804
FINAL COPY

S19A1573.  CHAVEZ v. THE STATE.

PETERSON, Justice.

Juan Rabadan Chavez appeals his convictions for malice murder, participation in criminal street gang activity, possession of a firearm during the commission of a felony, and possession of a firearm by a first-offender probationer all stemming from the shooting death of Ricardo Hernandez Ovalle.[1] Chavez challenges the sufficiency of the evidence as to his conviction for participation in

---

[1] Ovalle was shot on July 23, 2015. On March 29, 2016, a Fulton County grand jury indicted Chavez for malice murder, participation in criminal street gang activity, three counts of felony murder (predicated on aggravated assault, criminal street gang activity, and possession of a firearm by a first-offender probationer), aggravated assault with a deadly weapon, possession of a firearm during the commission of a felony, and possession of a firearm by a first-offender probationer. At an August 2017 trial, a jury found Chavez guilty on all counts. The trial court on August 28, 2017, sentenced Chavez to serve life in prison for malice murder, fifteen years consecutive for criminal street gang activity, and five years consecutive for each of the firearm counts; the aggravated assault merged into malice murder, and the felony murder counts were vacated by operation of law. Chavez on September 8, 2017, filed a motion for new trial, amended by trial counsel on November 30, 2018. The trial court denied the motion on May 29, 2019. Chavez filed a notice of appeal on May 30, 2019, and an amended notice of appeal on June 6, 2019. The case was docketed to this Court's August 2019 term and orally argued on November 7, 2019.

criminal street gang activity and the felony murder count predicated on that felony. He also argues that his lawyers at trial were ineffective in their handling of his prior first-offender disposition and that the trial court erred by denying his motion for a mistrial based on the State's failure to disclose a witness's prior inconsistent statement. Per our usual practice of reviewing the sufficiency of the evidence in murder cases, we conclude that the evidence was sufficient to sustain all but one of Chavez's convictions; the evidence was insufficient to sustain Chavez's conviction for possession of a firearm by a first-offender probationer, and we reverse that conviction. Chavez has not shown that his trial counsel were ineffective or that the State's failure to disclose the alleged witness statement violated his constitutional rights, and so we affirm his other convictions.

The trial evidence in the light most favorable to the verdicts showed the following. On July 23, 2015, Ovalle asked fellow

Westside Locos gang member Andres Duartes[2] to give him a ride. While they were out, Duartes sold someone prescription medication at the Azalea Parks apartment complex in the Sandy Springs area of Fulton County. As Duartes began to drive out of the complex, Ovalle yelled out expletives toward someone and used the name "Joker," asked Duartes to pull over, and jumped out of the car. Duartes heard Ovalle say, "where you from," meaning what gang are you from, and, "oh, s***." Ovalle ran out of sight, at which point Duartes heard gunshots. Police who responded to the scene found Ovalle lying on the ground; he died from gunshot wounds.

Duartes claimed that he did not see the shooter's face, but he considered the shooting to be gang-related because the name "Joker" was from a rival gang, Sox Los. Duartes also testified that Ovalle had been shot previously by a member of Sox Los. Police determined that Lionel Marron of Sandy Springs, who was in the Sox Los gang with Chavez, went by "Joker." But witnesses failed to pick Marron

---

[2] Although both parties refer to this witness by the last name "Duarte," the witness spelled his own name as "Duartes" at trial.

out of a photo array.

Several sources, including Ovalle's girlfriend, Dakota Parmelle, identified "Chucky" as a possible culprit. Chavez went by the name "Chucky." An Azalea Parks resident who knew Chavez testified that he saw Chavez shoot Ovalle. Other witnesses picked Chavez out of a photo array with "50% certainty," although one said that the man he identified, whom he saw walking up a hill immediately after he heard gunshots, could not have fired the shots.

Cell phone data showed that Chavez and Marron had many phone conversations on the day of the shooting, both before and after. Chavez called Marron at the same time as the initial 911 call reporting the shooting, at which point Chavez was in the vicinity of Azalea Parks and Marron was more than 15 miles away.

No ballistics evidence was found at the scene of the shooting. Three Remington brand .38-caliber bullets were recovered from Ovalle's body during his autopsy; they all came from the same firearm. Three spent shell casings and one live round found in Chavez's room were all .38 caliber, but none was a Remington brand.

A few days after the shooting, Chavez left his apartment in a hurry with only a backpack, telling his roommate he was going out of state. He did not return to the apartment. On March 2, 2016, more than seven months after the shooting, he was arrested reentering the United States at the Mexican border.

Because Chavez was charged with possession of a firearm by a first-offender probationer, the trial court admitted evidence that Chavez had been sentenced to two years of probation under the First Offender Act in July 2013. The jury was presented evidence that Chavez received that disposition after he pleaded guilty to possession of cocaine, possession of a firearm during the commission of a felony, driving without a license, and failure to maintain lane.

1.    Chavez first argues that the evidence was insufficient to convict him of criminal street gang activity, as well as the felony murder count predicated on that felony. We conclude that the evidence was sufficient to convict him of criminal street gang activity, as well as malice murder and possession of a firearm during

the commission of a felony.[3] But we conclude that the evidence was insufficient to sustain Chavez's conviction for possession of a firearm by a first-offender probationer.

When evaluating the sufficiency of evidence, the proper standard of review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). We do not resolve conflicts in the evidence or determine the credibility of witnesses; instead, we view the evidence in the "light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." *Hayes v. State*, 292 Ga. 506, 506 (739 SE2d 313) (2013) (citation and punctuation omitted). The jury's resolution of these issues "adversely to the defendant does not render the evidence insufficient." *Graham v. State*, 301 Ga. 675, 677 (1) (804 SE2d 113) (2017) (citation and punctuation omitted).

---

[3] Having determined that the evidence was sufficient to affirm a conviction for malice murder, Chavez's claim that the evidence was insufficient to support a conviction for felony murder predicated on criminal street gang activity is moot, because the felony murder count was vacated by operation of law. See *Blackledge v. State*, 299 Ga. 385, 387 (1) n.3 (788 SE2d 353) (2016).

(a) Chavez was charged with violating the Street Gang Act on the basis that, while associated with a criminal street gang, he participated in criminal gang activity through the commission of at least one of several crimes: murder, felony murder, aggravated assault with a deadly weapon, and possession of a firearm during the commission of a felony. To convict Chavez, the State had to prove beyond a reasonable doubt the existence of a "criminal street gang," that Chavez was associated with the gang, that he committed one of the offenses listed in OCGA § 16-15-3 (1), and that the commission of the predicate offense was intended to further the interests of the gang. See *McGruder v. State*, 303 Ga. 588, 591-592 (II) (814 SE2d 293) (2018). Chavez's sole argument as to the sufficiency of his criminal street gang activity conviction is that the State did not prove that Sox Los met the definition of a criminal street gang, defined in OCGA § 16-15-3 (3) as "any organization, association, or group of three or more persons associated in fact, whether formal or informal, which engages in criminal gang activity as defined in" OCGA § 16-15-3 (1). In particular, Chavez argues that the evidence

7

failed to show that the gang consisted of three or more members.

The State's gang expert testified that he was familiar with the presence of the Sox Los gang in Georgia, saying that it was a "subset" of the Sureños 13 gang. He said he had "seen a few" members of the "Sureños Sox Los gang" migrate from the west coast to the South, but acknowledged he had not "seen many" and could not "say [that he had seen] more than three." He then testified that the Sox Los gang "absolutely" has more than three members. Police testified that Chavez was associated with the Sox Los gang, and the State admitted multiple photos of Chavez displaying gang signs and symbols and having tattoos representing the Sox Los gang.

We conclude that the evidence presented was sufficient for the jury to conclude that Sox Los is a criminal street gang. Evidence that Chavez displayed signs, symbols, and tattoos of the Sox Los gang was itself evidence of that gang's existence. See OCGA § 16-15-3 (3) ("The existence of [a criminal street gang] may be established by evidence of a common name or common identifying signs, symbols, tattoos, graffiti, or attire or other distinguishing characteristics,

8

including, but not limited to, common activities, customs, or behaviors."). And the State's expert testified that the Sox Los gang "absolutely" has more than three members. Although Chavez points to the expert's testimony that he had not observed more than three Sox Los members in the South, the statutory definition does not require the existence of more than two members in Georgia or a particular geographic region.[4] To the extent that Chavez argues that this testimony shows the expert lacked personal knowledge when he testified that Sox Los had more than three members generally, Chavez raised no such objection to this testimony. He also has not shown that such an objection would have had merit. And even if the

---

[4] Indeed, the definition of "criminal street gang" refers to a group that "engages in criminal gang activity," the definition of which explicitly includes actions taken outside of the state of Georgia. See OCGA § 16-15-3 (1) (I), (J) (defining "criminal gang activity" to include "the commission, attempted commission, conspiracy to commit, or the solicitation, coercion, or intimidation of another person to commit . . . on or after July 1, 2006 . . . [a]ny criminal offense committed in violation of the laws of the United States or its territories, dominions, or possessions, any of the several states, or any foreign nation which, if committed in this state, would be considered criminal gang activity under this Code section; and . . . [a]ny criminal offense in the State of Georgia, any other state, or the United States that involves violence, possession of a weapon, or use of a weapon, whether designated as a felony or not, and regardless of the maximum sentence that could be imposed or actually was imposed").

evidence were wrongfully admitted, such evidence may be considered in determining whether the trial evidence was sufficient to sustain a defendant's conviction. See *Green v. State*, 291 Ga. 287, 289 (1) (728 SE2d 668) (2012).

(b) Although Chavez has not challenged the sufficiency of the evidence as to his other convictions, we have reviewed them according to our usual practice in murder cases. We conclude that the evidence was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Chavez was guilty of malice murder and possession of a firearm during the commission of a felony. But we also conclude that the evidence was not sufficient to support Chavez's conviction for possession of a firearm by a first-offender probationer.

At the time of Ovalle's shooting, the Georgia Code provided that "[a]ny person who *is on probation* as a felony first offender pursuant to Article 3 of Chapter 8 of Title 42 . . . and who receives, possesses, or transports any firearm commits a felony[.]" OCGA §

16-11-131 (b) (2014) (emphasis added).[5] It also provided that "[a]ny person placed on probation as a first offender pursuant to Article 3 of Chapter 8 of Title 42 and subsequently discharged without court adjudication of guilt pursuant to [OCGA §] 42-8-62 shall, upon such discharge, be relieved from the disabilities imposed by this Code section." OCGA § 16-11-131 (f) (2014).[6] In other words, the imposition of felony first-offender probation does not preclude the probationer from legally possessing a firearm ever again, but only forbids such possession during the term of the probation. And this Court has made it clear that the "discharge" of a first-offender probationer is automatic upon the successful completion of the terms of the sentence; it does not require a subsequent formal recognition of that successful completion. See *State v. Mills*, 268 Ga. 873 (495

---

[5] This subsection has since been amended. See Ga. L. 2018, pp. 550, 578, § 4-4. But the relevant language remains unchanged.

[6] OCGA § 16-11-131 (f) now reads:

Any person sentenced as a first offender pursuant to Article 3 of Chapter 8 of Title 42 or sentenced pursuant to subsection (a) or (c) of Code Section 16-13-2 and subsequently discharged without court adjudication of guilt as a matter of law pursuant to Code Section 42-8-60 or 16-13-2, as applicable, shall, upon such discharge, be relieved from the disabilities imposed by this Code section.

SE2d 1) (1998) (where defendant had successfully completed his first-offender probationary sentence at the time he allegedly violated OCGA § 16-11-131, trial court correctly granted his motion to dismiss). Following oral argument, the State conceded by letter brief that Chavez's first-offender probation expired on July 11, 2015, prior to the July 23, 2015 date on which he was alleged to have possessed a firearm. And the State presented no evidence that Chavez possessed a firearm during the term of his probation and prior to his discharge. We therefore reverse Chavez's conviction for possession of a firearm by a first-offender probationer.

2. Chavez next argues that his trial counsel rendered ineffective assistance in several respects related to counsel's failure to stipulate to his status as a first-offender probationer. We disagree.

To prevail on a claim of ineffective assistance of counsel, Chavez must show both that his trial counsel's performance was deficient and that this deficiency prejudiced his defense. *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). "To establish deficient performance, an appellant must

12

overcome the strong presumption that his . . . counsel's conduct falls within the broad range of reasonable professional conduct and show that his counsel performed in an objectively unreasonable way" in the light of all of the circumstances. *Smith v. State*, 296 Ga. 731, 733 (2) (770 SE2d 610) (2015) (citation and punctuation omitted). To establish prejudice, an appellant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U. S. at 694. An appellant must prove both prongs of the *Strickland* test, and if he fails to prove one prong, "it is not incumbent upon this Court to examine the other prong." *Smith*, 296 Ga. at 733 (2) (citation and punctuation omitted). In reviewing either component of the inquiry, all factual findings by the trial court will be affirmed unless clearly erroneous. Id.

(a) Chavez argues that trial counsel performed deficiently by failing to stipulate to his status as a first-offender probationer at the time of the offense. Given that the evidence of his prior disposition was relevant only to prove his status as a first offender, Chavez

13

argues, neither the State nor the trial court could have rejected an offer to stipulate. And due to this failure to stipulate, Chavez argues, the jury heard prejudicial character evidence.

Even if trial counsel could have performed deficiently in failing to stipulate to Chavez's status as a first-offender probationer, however, Chavez has not shown a reasonable probability of a different outcome but for that failure to stipulate. This Court has held that prior convictions involving firearms and minor drug offenses are not likely to inflame the jury's passions in a murder case. *Moore v. State*, 306 Ga. 532, 534-535 (2) (b) (832 SE2d 384) (2019). Chavez points to language from the United States Supreme Court to the effect that the risk of unfair prejudice from a prior conviction for a gun crime is "obvious." *Old Chief v. United States*, 519 U. S. 172, 185 (117 SCt 644, 136 LE2d 574) (1997). But the Supreme Court made clear in that same case that the risk of unfair prejudice "will vary from case to case" and that "a prior offense may be so far removed in time or nature from the current gun charge and any others brought with it that its potential to prejudice the

14

defendant unfairly will be minimal." Id. at 185 & n.8.

Here, the evidence against Chavez was strong. Two witnesses (including one who knew Chavez) identified him as the shooter, another witness placed him at the crime scene at the time of the murder, ammunition of the same caliber as the bullets found in the victim's body was located in Chavez's bedroom, his cell phone was in the area at the time of the murder, he initiated a flurry of phone calls to another gang member immediately after the murder, and he fled the state soon after the shooting. Although Chavez points out that the trial court did not instruct the jury that it should consider the first-offender disposition only to determine whether he was guilty of possessing a firearm while a first-offender probationer, the prior gun charge at issue was a mere possession offense, unaccompanied by any violent offenses, from which the jury was unlikely to draw an impermissible inference that Chavez had a propensity to commit the sort of violent crimes with which he was charged here. The State did not bring out details of the prior offenses through testimony, and instead only entered a copy of the prior

disposition into evidence without comment at the close of its case. Although the State referenced the prior disposition in its closing argument, it is not clear, as discussed below, that the prosecutor made the sort of improper propensity argument as suggested by Chavez on appeal.[7] Chavez has not shown a reasonable probability of a different result had counsel offered to stipulate to his (expired) first-offender status. See *Ballard v. State*, 297 Ga. 248, 252-253 (6) (a) (773 SE2d 254) (2015) (no prejudice shown from trial counsel's failure to stipulate to defendant's convicted-felon status given that the prior convictions were not of the nature likely to inflame the jury's passions and the evidence of the defendant's guilt was strong).[8]

---

[7] The nature of the prior offenses, and the extent to which the jury heard details of them, makes this case different from a case relied on by Chavez, *Starling v. State*, 285 Ga. App. 474 (646 SE2d 695) (2007). In *Starling*, the Court of Appeals held that trial counsel was ineffective for failing to obtain a stipulation or a limiting instruction as to the defendant's felon status. Id. at 479 (b). There, the prior convictions involved violence, and the jury heard details of the offenses, including that the defendant had pleaded guilty to an aggravated assault by using a gun — information that was highly prejudicial to the jury's consideration of the aggravated assault charge against the defendant, which involved firing a gun. Id. at 476 (a), 478-479 (b).

[8] To the extent that Chavez also argues that trial counsel was deficient

(b)    Chavez argues that trial counsel was ineffective for failing to object to the prosecutor's use of Chavez's prior criminal disposition in closing argument. In particular, the State referenced the details of Chavez's "certified conviction." The prosecutor then continued: "So not only did he possess it on the day of the incident, but we know that he continuously had firearms because he had a numerous of ballistics [sic] located in his bedroom." Chavez argues that trial counsel should have objected to the prosecutor's erroneous characterization of Chavez's first-offender disposition as a "conviction," as well as the prosecutor's elicitation of an improper propensity inference by using the disposition to argue that Chavez "continuously had firearms."

Trial counsel testified that the use of the disposition was at least "potentially" objectionable under OCGA § 24-4-404 (b) and that they had no strategy in failing to object. But trial counsel's own assessment of their performance does not control. *Kennedy v. State*,

---

for failing to object to the admission and publication of the certified copy of his first-offender disposition, he fails to identify any basis for such an objection in the absence of a stipulation.

304 Ga. 285, 288 (2) (818 SE2d 581) (2018). "Instead, to establish that trial counsel was deficient, [Chavez] has to show that no reasonable attorney would have failed to object to the prosecutor's argument." Id.

It is not clear that the prosecutor was relying on the first-offender disposition in arguing that Chavez "continuously had firearms"; it appears at least as likely that he was relying on the physical evidence found in Chavez's room. "Because the prosecutor's statements, in context, did not constitute a clear propensity argument, [Chavez] has not demonstrated that no reasonable attorney would have failed to object to those statements." *Kennedy*, 304 Ga. at 289 (2).

Chavez also argues on appeal that trial counsel should have objected to the prosecutor characterizing his first-offender disposition as a "conviction," given that he was not resentenced or adjudicated guilty. It is true that we have said that "[f]irst offender pleas are not a 'conviction' as understood in the Criminal Code" because the defendant is discharged without an adjudication of

18

guilt. *Williams v. State*, 301 Ga. 829, 834 (5) (804 SE2d 398) (2017); see also *Priest v. State*, 261 Ga. 651, 652 (2) (409 SE2d 657) (1991). But it would not be unreasonable to refer to Chavez's first-offender disposition colloquially as a "conviction" given that he had entered a plea of guilty, and the disposition carried negative consequences for him and temporarily resolved the charges against him. See OCGA § 42-8-60 (a) (1) (2012) ("Upon a verdict or plea of guilty or a plea of nolo contendere, but before an adjudication of guilt, in the case of a defendant who has not been previously convicted of a felony, the court may, without entering a judgment of guilt and with the consent of the defendant . . . [d]efer further proceeding and place the defendant on probation as provided by law[.]").[9] A reasonable attorney might have assumed that an objection would have resulted in the jury being given some explanation of the nature of a first-offender disposition, including that Chavez had pleaded guilty to the charges in question. A reasonable attorney thus might well have

---

[9] Indeed, in his brief before this Court, Chavez refers to his first-offender disposition as "convictions" multiple times.

19

surmised that an objection would have been of little help and possibly could have hurt the defense by unduly focusing on Chavez's criminal history. Chavez has not shown deficient performance in trial counsel's failure to object to the remarks in question.

(c) Chavez also argues that trial counsel performed deficiently by making an inflammatory closing argument in his defense. Specifically, the defense stated in closing argument as follows:

> You heard all kinds of things about him being in a gang. You see the tattoos. You see him as a little boy him and Joker sitting there with gang signs. They were little menaces. Throw on top of that running back and forth across the border. They are everything, everything that is deemed undesirable in our society right now. He has got a conviction for possession of cocaine and he had a gun. Bad person.

Defense counsel then explained that, despite these bad things the jury had heard, Chavez had a constitutional right to hold the State to a burden of proof of beyond a reasonable doubt, even if the jury did not like him or "what he represents." Chavez argues that this argument exacerbated the harm caused by counsel's failure to stipulate to his first-offender status by focusing the jury on

20

character evidence and that, by referencing "running back and forth across the border," injected prejudicial facts not in evidence regarding Chavez's immigration status.

Defense counsel testified that he made the referenced argument to "shock" and "embarrass" the jury about the prospect of convicting someone who is a "scapegoat" for society's ills and to suggest that the State's case was merely "character assassination, basically trying to accuse him of one thing because he looks and resembles someone you are told every day is a bad person."

> Defense counsel is given wide latitude in making . . . closing arguments. This Court will not, with benefit of hindsight, second-guess defense trial strategies therein. Absent a strong showing that counsel's actions were not reasonable, we will presume that these strategies were not deficient.

*Muller v. State*, 284 Ga. 70, 73 (3) (663 SE2d 206) (2008) (citations and punctuation omitted). Again, the inquiry into the reasonableness of counsel's strategic decisions is an objective one. We cannot say it was objectively unreasonable to address in closing the prejudicial information the jury had heard about Chavez, reminding the jury that it could not convict him of murder simply

21

because he had gang tattoos, had traveled to Mexico, and had previous criminal proceedings against him. Chavez has not shown that trial counsel performed deficiently in presenting closing argument.

3.    Finally, Chavez argues that the trial court erred in denying his motion for a mistrial after the State failed to disclose a prior inconsistent statement by Duartes in violation of *Brady v. Maryland*, 373 U. S. 83 (83 SCt 1194, 10 LE2d 215) (1963). We disagree.

During Duartes's testimony at trial, he maintained that Ovalle used the name "Joker" as he emerged from the car, and Duartes denied telling Parmelle that the shooter went by the name "Chucky." But Parmelle subsequently testified that Duartes told her that the shooter's name was "Chucky." The defense later moved for a mistrial on the basis of a *Brady* violation in the State's failure to disclose Duartes's alleged statement to Parmelle. The trial court denied the motion.

"[T]he suppression by the prosecution of evidence favorable to

an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U. S. at 87. This includes the suppression of impeachment evidence that may be used to challenge the credibility of a witness. See *Giglio v. United States*, 405 U. S. 150, 154-155 (92 SCt 763, 31 LE2d 104) (1972). To succeed on this claim, Chavez "must demonstrate that the prosecution wilfully or inadvertently suppressed evidence favorable to [him], either because it is exculpatory or impeaching." *Jones v. Medlin*, 302 Ga. 555, 557 (807 SE2d 849) (2017) (citation and punctuation omitted). In addition, Chavez is entitled to a new trial only if the evidence is "*material* to [his] guilt or punishment." *Turner v. United States*, __ U. S. __, __ (137 SCt 1885, 198 LE2d 443) (2017) (citation and punctuation omitted; emphasis in original). "[E]vidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Cone v. Bell*, 556 U. S. 449, 469-470 (129 SCt 1769, 173 LE2d 701) (2009). "A 'reasonable

probability' of a different result is one in which the suppressed evidence undermines confidence in the outcome of the trial." *Turner*, __ U. S. at __ (citation and punctuation omitted); see also *Jones*, 302 Ga. at 561 (2) (same). And, in order to determine the materiality of the suppressed evidence, we must evaluate that evidence "in the context of the entire record." *Turner*, __ U. S. at __ (citation and punctuation omitted).

Chavez argues that the State should have disclosed Duartes's alleged statement to Parmelle because it impeached Duartes's trial testimony to the contrary. To the extent that the statement had some impeachment value, Chavez cannot show a reasonable probability that the result of the trial would have been different had the State disclosed it to him. The jury actually heard the evidence of the statement. Parmelle testified as to the statement in question, and Chavez cross-examined her about that statement, including whether she had ever told the police about it. And the jury was free to credit or reject her assertions about what Duartes told her. See *Cain v. State*, 306 Ga. 434, 440 (3) (831 SE2d 788) (2019) (no showing

24

that voicemails were material given that defendant and his sister testified to their contents).

But Chavez's argument as to the materiality of the alleged statement is not that he actually would have used it to impeach Duartes's testimony. Obviously, Chavez does not suggest that, had the prosecution disclosed the alleged statement to him in advance of trial, he would have impeached Duartes's trial testimony — that Duartes did not see the shooter's face, and that Ovalle had identified someone other than Chavez as the shooter — with his alleged statement to Parmelle indicating that Chavez was the shooter. Rather, Chavez argues that the alleged statement was material given its *inculpatory* nature, arguing that the result of the proceedings might have been different because the statement was so harmful to him that he might have pleaded guilty instead of going to trial. But he points to no authority for the proposition that an impeaching statement may be material due to its inculpatory

25

nature.[10] Chavez has not shown a *Brady* violation. See *Chandler v. State*, 204 Ga. App. 816, 819-820 (2) (421 SE2d 288) (1992) (no *Brady* violation in State's failure to disclose statement of accomplice's girlfriend, given the statement was primarily inculpatory in that it corroborated evidence of accomplice's statements to police that appellant shot the victim, and any value as impeachment of accomplice was not such that nondisclosure amounted to a constitutional violation).[11]

*Judgment affirmed in part and reversed in part. All the Justices concur.*

---

[10] Moreover, a recommendation filed by the State on the first day of trial indicates that, had Chavez pleaded guilty, the State would have recommended the same sentence that he ultimately received.

[11] Citing OCGA § 17-16-6, Chavez alternatively argues that "delayed pretrial disclosure may have enabled [him] to exclude the statements because an inference of bad faith could easily be justified." But he cites no authority for the notion that failure to disclose as a means to avoid sanction under general discovery rules for the failure to disclose evidence more promptly is itself a *Brady* violation. Moreover, the State did not hide the statement at trial, but in fact presented it through Parmelle's testimony, and Chavez did not object under the general discovery rules.

DECIDED JANUARY 13, 2020 -- RECONSIDERATION DENIED FEBRUARY 10, 2020.

Murder. Fulton Superior Court. Before Judge Schwall.

*Matthew K. Winchester*, for appellant.

*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, David K. Getachew-Smith, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Leslie A. Coots, Ashleigh D. Headrick, Assistant Attorneys General,* for appellee.