**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 4, 2022**

# In the Court of Appeals of Georgia

A22A1085. THE STATE v. SHELNUTT.

PHIPPS, Senior Appellate Judge.

Following a jury trial, Darrell Reed Shelnutt was found guilty of two counts each of aggravated assault on a law enforcement officer and interference with government property. Shelnutt timely filed a motion for new trial, as amended, which the trial court granted after determining that trial counsel rendered ineffective assistance by (a) failing to object to testimony that lacked proper foundation, (b) failing to call an expert or other witnesses in support of his defense, (c) leaving the jury with the impression that Shelnutt had a criminal history, and (d) negatively characterizing Shelnutt during his closing argument. On appeal, the State argues that the trial court erred in concluding that Shelnutt's trial counsel performed deficiently

and that prejudice resulted from the deficient performance. As explained below, we agree and therefore reverse the order granting Shelnutt a new trial.

The record shows that on August 23, 2018, Shelnutt and his mother-in-law, G. T., were at a property owned by G. T.'s daughter/Shelnutt's wife. At the time, Shelnutt had been living in a residence on the property, and G. T. wanted to evict him. While Shelnutt was loading up his truck to move, he got into a physical altercation with G. T. Following the altercation, G. T. called 911 for assistance, and Shelnutt left. Two sheriff's deputies arrived, parked on the property, exited their vehicles, and began speaking with G. T. Moments later, Shelnutt came "flying up" the driveway in a Ford F-150 truck. According to one of the deputies, as Shelnutt's truck approached the property, he did not apply the brakes and "revved [the] engine the entire time." The deputies and G. T. ran into the yard, while Shelnutt drove his truck into the back of one of the deputies' vehicles, pushing that vehicle into the back of the other deputy's vehicle. As a result, both vehicles were extensively damaged. Shelnutt exited his truck, appeared to grab a gun, ran and barricaded himself inside the residence, and yelled out a window that he was "not going down without a fight." The deputies called for backup, and a response team arrived at the property. Unbeknownst to the deputies and response team, Shelnutt had fled the residence. He

2

was later located and arrested approximately one mile from the property with six bullets in his pocket.

Following his arrest, law enforcement interviewed Shelnutt. The investigating officer testified that, during the interview, Shelnutt stated that he was angry about G. T. evicting him. The officer further testified that when asked why he drove his truck into the deputies' vehicles, Shelnutt stated that "[the] County made [him] do it" and that "it got the officer[s'] attention, didn't it?" When asked whether Shelnutt saw the deputies and where they were located, the investigator testified that Shelnutt told him that he had, but he "locked the brakes up" while driving up the driveway. According to the investigating officer, Shelnutt became irate when questioned about why there were no skid marks at the scene, so the officer changed his line of questioning.

In January 2019, Shelnutt was indicted on two counts each of aggravated assault on a law enforcement officer and interference with government property, and the case proceeded to a jury trial. At trial, the State presented the testimony of G. T. and eight law enforcement officers, including a Georgia State Patrol officer who was trained in crash scene investigation and wrote a crash scene investigation report and the officer who interviewed Shelnutt following his arrest. The officer who wrote the

3

crash scene investigation report testified that there was no evidence that Shelnutt applied his brakes before colliding with the deputies' vehicles. The State also introduced dash cam video recording from the deputy's vehicle, a video recording of Shelnutt's in-custody interview, and photographs of the damaged vehicles.

Shelnutt called two witnesses in his defense — an eyewitness, A. M., and his nephew, J. B. — to offer testimony that the collision was not intentional. While Shelnutt did not testify, in his cross-examination of the State's witnesses and closing argument, Shelnutt's counsel took the position that the State's case fell short of proving that Shelnutt acted with intent when he crashed into the deputies' vehicles. During closing argument, the State contended that the evidence showed that Shelnutt intentionally drove his truck toward the deputies and into their vehicles. The jury found Shelnutt guilty on all counts. Shelnutt was then sentenced to ten years, to serve the first three years in confinement and the remainder on probation.

Following sentencing, Shelnutt moved for a new trial, asserting several claims of error, including that his trial counsel rendered ineffective assistance. The court held a hearing on the motion, found that Shelnutt had received ineffective assistance of counsel, and granted Shelnutt a new trial. The State appeals, contending that the trial court erred in granting a new trial because Shelnutt did not carry his burden of

demonstrating that his counsel rendered ineffective assistance. For the reasons that follow, we agree.

In determining whether Shelnutt received ineffective assistance of counsel, we apply the two-pronged test set out in *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). See *Harris v. State*, 313 Ga. 225, 234 (5) (869 SE2d 461) (2022).

> To show that the performance of his lawyer was deficient, [Shelnutt] must prove that his lawyer performed [his] duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. As for prejudice, the proper standard requires [Shelnutt] to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*State v. Harris*, 301 Ga. 234, 237 (2) (799 SE2d 801) (2017) (citations and punctuation omitted). A claim of ineffective assistance of counsel is a mixed question of law and fact. Id. "Therefore, when reviewing a trial court's decision to grant a motion for new trial based on ineffective assistance of counsel, we defer to the trial court's findings of fact unless clearly erroneous, but owe no such deference to its conclusions of law[,] which we apply independently to the facts." Id. (citation and

5

punctuation omitted). With these guiding principles in mind, we turn to the State's argument that the trial court erred in finding that Shelnutt met his burden of demonstrating ineffective assistance of counsel.

1. We first consider the State's contention that the trial court erred in finding that Shelnutt's counsel rendered ineffective assistance by failing to raise an objection, based upon the lack of foundation, to lay testimony about the speed of Shelnutt's vehicle.[1] We conclude that trial counsel's failure to object was neither deficient nor prejudicial under *Strickland*. See 466 U. S. at 687 (III).

*(a) Deficiency.* The State asserts that counsel's decision not to raise a foundation objection was strategic and reasonable and that the trial court therefore erred in concluding that counsel performed deficiently. At trial, two lay witnesses testified as to the speed of Shelnutt's truck before impact: (1) G. T. testified that Shelnutt was traveling approximately 90 miles per hour, and (2) A. M. testified that Shelnutt was driving "really fast" and "probably going about seventy, eighty" miles per hour. Neither witness testified as to the basis for their speed estimation, and trial

---

[1] In his brief, Shelnutt asserts that the State fails to cite any portion of the record in support of its contentions of error. However, the State's brief, which cites to the record in part one instead of part three, substantially complies with Court of Appeals Rule 25 (a) (5).

counsel did not object to the referenced testimony.[2] Shelnutt's trial counsel testified at the motion for new trial hearing that he did not object to the speed estimation testimony because he thought that such knowledge was in the "normal ken of any adult who drives," and by the time he realized he should have objected, the questions had been already answered. However, trial counsel also testified that he did not object for the additional reason that the testimony supported his trial strategy and accident defense — that Shelnutt was driving fast and "could not stop despite his best efforts." In fact, in his closing argument, trial counsel argued that Shelnutt was driving "too fast" and "recklessly" as he approached the vehicles, implying that Shelnutt struck them by accident. Additionally, trial counsel testified at the motion for new trial hearing that the jury viewed the dash cam video recording, which showed "one car being hit so hard that it [slammed] into another" and that he was "using those facts

---

[2] When a "witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences shall be limited to those opinions or inferences which are: (1) Rationally based on the perception of the witness; (2) Helpful to a clear understanding of the witness's testimony or the determination of a fact in issue; and (3) Not based on scientific, technical, or other specialized knowledge within the scope of Code Section 24-7-702." OCGA § 24-7-701 (a); accord *Clack v. Hasnat*, 354 Ga. App. 502, 503 (1) (841 SE2d 210) (2020); *Horton v. State*, 119 Ga. App. 43, 44 (3) (166 SE2d 47) (1969). Thus, a layperson's "opinion of speed is admissible in evidence when [the layperson] has testified as to the facts upon which the opinion is based." *Clack*, 354 Ga. App. at 503 (1) (citation and punctuation omitted).

to make the additional point that . . . [Shelnutt] could not stop despite his best efforts."

As general rule, "matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel." *Hutcheson v. State*, 361 Ga. App. 890, 898 (3) (a) (864 SE2d 106) (2021) (citation and punctuation omitted). Decisions about "when and how to raise foundation objections [are] generally a matter of trial strategy." *Brown v. State*, 307 Ga. App. 797, 807 (5) (d) (706 SE2d 170) (2011) (citation and punctuation omitted). Consequently, because "the making of objections falls within the realm of trial tactics and strategy," it "usually provides no basis for reversal of a conviction." *Moon v. State*, 288 Ga. 508, 516 (9) (705 SE2d 649) (2011) (citations and punctuation omitted). Here, counsel testified that he did not object to the testimony, in part, because it supported his trial strategy and accident defense — that Shelnutt's speed contributed to the "accident." This strategy was not professionally unreasonable, and we therefore cannot say that counsel performed deficiently in choosing not to raise a foundation objection. See *Brown*, 307 Ga. App. at 807 (5) (d).

*(b) Prejudice.* Regardless, even if trial counsel performed deficiently, the failure to raise a foundation objection was not prejudicial to Shelnutt's defense

8

because, as argued by the State, other evidence presented at trial established his speed, and G. T.'s and A. M.'s testimony therefore was cumulative. Both deputies whose vehicles were struck by Shelnutt's truck testified about his truck's approach. One deputy stated that he turned around and saw Shelnutt's truck as it came "flying up the driveway," and the other described Shelnutt's truck traveling "towards [them] at a high rate of speed." And, the dash cam video recording showing the impact of Shelnutt's collision into the deputies' vehicle was played for the jury. Therefore, it is highly unlikely that the result of the trial would have been different but for counsel's failure to object to G. T.'s and A. M.'s testimony regarding Shelnutt's speed. See *Marshall v. State*, 299 Ga. 825, 828 (2) (b) (792 SE2d 350) (2016) (no prejudice where the effect of the challenged statements "was merely cumulative of other undisputed evidence"). Accordingly, counsel's decision not to raise a foundation objection was neither deficient nor prejudicial.

2. The State next argues that the trial court erred by determining that Shelnutt's counsel rendered ineffective assistance by failing to (a) call an accident reconstructionist as an expert to testify or (b) support the accident theory of defense with other available evidence. The State asserts that the trial court erred because (a) trial counsel's decision not to call the accident reconstructionist as an expert was

9

reasonable under the circumstances, and (b) Shelnutt did not call the accident reconstructionist, or any other witness, to testify at the motion for new trial hearing, and he therefore failed to show a reasonable probability that, but for counsel's decision in this regard, the result of the proceeding would have been different. We agree.

*(a) Deficiency.* It is generally accepted that decisions about "which defense witnesses to call [are] a matter of trial strategy and tactics" and that "errors in that regard will not constitute ineffective assistance of counsel unless those errors are unreasonable ones no competent attorney would have made under similar circumstances." *Perdue v. State*, 298 Ga. 841, 845 (3) (785 SE2d 291) (2016) (citation and punctuation omitted) (finding counsel was not professionally deficient where counsel conducted a benefit analysis and opted to cross-examine the State's expert rather than retain an expert); see also *Matthews v. State*, 301 Ga. 286, 289 (2) (800 SE2d 533) (2017) (finding reasonable professional conduct where counsel consulted with a supervisor, decided not to hire an expert, and instead used cross-examination and closing argument to advance the defense theory).

At the motion for new trial hearing, trial counsel was questioned about his decision not to call an expert witness to testify on Shelnutt's behalf. Counsel testified

10

that he "interviewed everyone [he] thought might have something substantive to add" to the defense. And, counsel explained that while he hired an accident reconstructionist to review the case file and written documentation, he ultimately decided not to call an expert witness because the "black box" containing crash data from Shelnutt's truck was not located and, without it, the accident reconstructionist's report would be incomplete.[3] According to trial counsel, because the report was incomplete, he opted to cross-examine the Georgia State Patrol officer who was trained in crash scene investigation about the crash rather than call an expert reconstructionist to testify. Counsel testified that in hindsight, however, he would have called the accident reconstructionist.

We conclude that trial counsel's decision not to call an expert or additional witnesses to testify was strategic and derived from the evidence available to him at the time of trial. "Trial counsel articulated valid reasons for not calling [an expert] as a trial witness, and his strategy did not constitute ineffective assistance of counsel." *Noe v. State*, 287 Ga. App. 728, 731 (2) (652 SE2d 620) (2007). As for counsel's statement that he would have called the accident reconstructionist in hindsight,

---

[3] Trial counsel testified that a "black box" is a computerized device that contains information about a vehicle's operation and would show whether a vehicle was accelerating or braking before a crash.

11

"hindsight has no place in an assessment of the performance of trial counsel, and a lawyer second-guessing his or her own performance with the benefit of hindsight has no significance for an ineffective assistance of counsel claim." *State v. Walker*, 350 Ga. App. 168, 172 (1) (828 SE2d 402) (2019) (citation and punctuation omitted). Therefore, under the circumstances, counsel's decision to use cross-examination rather than call an expert to advance his theory of defense was not professionally deficient.

*(b) Prejudice.* Regardless, as argued by the State, Shelnutt also cannot establish prejudice because he did not proffer the testimony of the accident reconstructionist, or any other witness, as to the cause of the collision.

"To prove the prejudice prong of *Strickland* on a claim that trial counsel failed to call a witness, a defendant must show the witness's expected testimony by presenting either live testimony of the witness, an affidavit from the witness, or a legally recognized substitute for the uncalled witness's testimony." *Newby v. State*, 338 Ga. App. 588, 593 (3) (b) (791 SE2d 92) (2016) (citation and punctuation omitted) (finding defendant failed to establish a claim of ineffective assistance of counsel where, at the motion for new trial hearing, counsel did not call a witness or make a proffer as to the proposed witness's testimony); see also *Harris v. State*, 304

12

Ga. 652, 655 (2) (a) (821 SE2d 346) (2018) ("With regard to the purported witnesses who never testified, [a defendant] must introduce either testimony from the uncalled witness or a legally recognized substitute for his or her testimony.") (citation and punctuation omitted). Shelnutt failed to present any evidence at the motion for new trial hearing that would have been elicited from an accident reconstructionist, or any other witness, and he has not shown whether any such trial testimony would have been favorable to his defense; therefore, he has not satisfied his burden in this regard. See *State v. Dague*, 325 Ga. App. 202, 211-212 (3) (c) (750 SE2d 476) (2013) (rejecting a defendant's claim that he was prejudiced when only his trial counsel testified at the motion for new trial hearing, and not the witness the defendant claimed would have provided pertinent testimony had she been called to testify at trial). Because Shelnutt neither demonstrated that his trial counsel's strategy was unreasonable nor established that he was prejudiced by his trial counsel's decision, he has failed to show that his trial counsel rendered ineffective assistance. See id.

3. We next consider the State's contention that the trial court erred in finding that Shelnutt's trial counsel rendered ineffective assistance during his cross-examination of the officer who interviewed Shelnutt following his arrest. The State asserts that counsel's cross-examination was grounded in trial tactics and strategy,

13

that no harmful testimony was elicited, and that, as a result, the cross-examination was neither deficient nor prejudicial. We agree.

At trial, the State called the sheriff's investigator who interviewed Shelnutt following his arrest, and the investigator testified that, during the interview, Shelnutt indicated that he owned a revolver. On cross-examination, trial counsel asked whether Shelnutt had a gun at the time of his arrest, and the investigator testified that Shelnutt did not. Trial counsel then asked the investigator if he had looked into Shelnutt's criminal history and whether the investigator knew if it was "a crime for [Shelnutt] to have a firearm" at the time of his arrest.[4] The investigator testified that he did not know whether Shelnutt could legally possess a firearm because he did not

---

[4] The prosecutor objected and argued that these questions were not relevant and constituted improper attempts to bolster Shelnutt's character. Trial counsel responded that his questions "had nothing to do with bolstering"; rather, he wanted to elicit testimony about whether it was a crime for his client to possess a firearm. The court sustained the prosecutor's objection to counsel's question about whether the investigator had looked into Shelnutt's criminal record and overruled the objection to counsel's question about whether the investigator knew if Shelnutt could legally possess a firearm. Neither party has challenged the court's rulings in this regard, and we therefore do not address them. See *Owens v. State*, 241 Ga. App. 140, 140 (4) (525 SE2d 150) (1999) ("[A party's] failure to raise . . . matters in his enumeration of errors and initial brief precludes appellate review.") (citation and punctuation omitted).

know Shelnutt's criminal history. Shortly thereafter, counsel concluded his cross-examination, and the investigator was excused.

*(a) Deficiency.* Generally, decisions on whether and how to conduct cross-examinations are the exclusive province of the lawyer after consultation with his client. See *State v. Wofford*, 321 Ga. App. 249, 257 (1) (a) (739 SE2d 110) (2013). Thus, because "[t]he scope of cross-examination is grounded in trial tactics and strategy," it "will rarely constitute ineffective assistance of counsel." *Clark v. State*, 360 Ga. App. 11, 15 (3) (b) (858 SE2d 519) (2021) (citation and punctuation omitted). In that regard, counsel's questions about a defendant's criminal record do not necessarily constitute ineffective assistance if they are part of a reasonable defense strategy. See *Collins v. State*, 276 Ga. 726, 728 (2) (583 SE2d 26) (2003) (rejecting ineffective assistance claim where counsel introduced defendant's criminal record on direct examination as part of defense strategy of portraying defendant "as a truthful man with nothing to hide"); *Crawford v. State*, 252 Ga. App. 722, 725 (3) (556 SE2d 888) (2001) (finding that counsel's decision to elicit testimony about a defendant's prior convictions as part of counsel's strategy of establishing that the defendant "had no history of violence, willingly admitted his past mistakes, . . . and had become a 'working man'" did not constitute ineffective assistance).

15

Here, trial counsel testified that he asked the investigator questions about Shelnutt's criminal record because he wanted to show that Shelnutt's behavior after the crash was not illegal and not relevant to the offenses for which he had been charged. He also testified that his strategy, at the time, was to show that (a) it was not illegal for Shelnutt to possess bullets or a gun, (b) "everything after the accident was a sideshow" because nothing illegal happened after the crash and no charges arose from any of the evidence gathered after the crash, and (c) Shelnutt's "alleged possession of a handgun" "had nothing to do with the charges at hand." However, upon reflection, at the motion for new trial hearing, counsel testified that the questions about Shelnutt's criminal record "[were] a mistake on [his] part." As stated previously, however, though Shelnutt's trial counsel may now view this line of inquiry differently, "reasonable minds may disagree after the fact, [and] effectiveness is not judged by hindsight." *Crawford*, 252 Ga. App. at 725 (3); see also *Jones v. State*, 296 Ga. 561, 565 (3) (769 SE2d 307) (2015) ("[E]ffective counsel does not mean errorless counsel, nor counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance.") (citation and punctuation omitted).

16

While counsel's cross-examination may have been inartful, his strategy of portraying Shelnutt's post-crash behavior as legal and not relevant to the crimes for which he had been charged was not objectively unreasonable. See, e.g., *Collins*, 276 Ga. at 728 (2); *Crawford*, 252 Ga. App. at 725 (3); see also *State v. Reynolds*, 332 Ga. App. 818, 823 (775 SE2d 187) (2015) (concluding that trial counsel's strategy of eliciting testimony about his client's drug-related offenses in an attempt to exculpate him from more serious charges related to an armed robbery was not "so unreasonable that no competent attorney would have pursued it under similar circumstances") (emphasis omitted). Thus, we conclude that Shelnutt's trial counsel's strategy was not unreasonable and that his performance therefore was not deficient.

*(b) Prejudice.* Regardless, even if trial counsel performed deficiently, Shelnutt also has failed to show a reasonable probability that, if the questions had not been asked, the result of the trial would have been different. See *Collins*, 276 Ga. at 728 (2). There is no indication that trial counsel's questions about Shelnutt's criminal record elicited evidence that he was a convicted felon or unlawfully possessed a firearm. Moreover, any testimony elicited about whether Shelnutt could have lawfully possessed a firearm or had a criminal record was not so significant to have contributed to the jury's verdict given the significant evidence that Shelnutt acted

17

intentionally when he drove his truck toward the deputies and into their vehicles. See

*Fountain v. State*, 231 Ga. App. 700, 701 (500 SE2d 614) (1998) (finding that

counsel's decision to elicit a defendant's criminal history was not prejudicial

considering the overwhelming evidence of the defendant's guilt). Therefore, we

conclude that Shelnutt's counsel's cross-examination was neither deficient nor

prejudicial.

4. The State contends that the trial court erred in finding that Shelnutt's trial

counsel's closing argument comments about Shelnutt's post-crash behavior

constituted ineffective assistance. We conclude that while counsel's comments during

closing arguably might be considered ill-phrased or coarse, they were neither

deficient nor prejudicial.

In closing argument, Shelnutt's trial counsel reviewed the evidence presented

at trial, commenting on Shelnutt's in-custody interview as follows:

> I watched [Shelnutt's] interview with [the police investigator] more
> times than I can count, and you're a stubborn son of a bitch, you know
> that. Couldn't [Shelnutt] have just answered [the investigator's]
> questions without being a smartass? Yes, [the investigator] asked him,
> did you see the deputies, and what did [Shelnutt] say? Yes, I did. If he
> hadn't been such — I'm going to say smart aleck — we're in a court of
> law, all right — maybe [the investigator] would have followed up with,

18

when did you see the deputies, because he saw the deputies when he hit the deputies' car; he didn't see them before. You couldn't have said that? You're killing me man, but that's ok because he enjoys the presumption of innocence, and the State's got to prove his guilt beyond a reasonable doubt, so you're allowed a little mistake here and there. . . . Did [Shelnutt] say he got someone's attention? Yes, he did. Was he being smart; was he being ornery; was he being a pain in the ass? Yes. What did he also say when pressed? I didn't try to hit anyone; I did everything I could to avoid it, didn't threaten anyone; I didn't have a gun. . . . And was [Shelnutt] a lot more hardheaded than he needed to be? Yes, but did he continue to say the same thing when pressed? Over and over, I tried to avoid it, tried to miss them, didn't mean it."

Following these comments, trial counsel argued that the evidence showed that while Shelnutt drove recklessly, he was not aiming for the deputies, and by the time Shelnutt saw them, he could not avoid them. Counsel concluded his closing argument by asking the jury to find that the State had not proven Shelnutt's guilt beyond a reasonable doubt.

*(a) Deficiency.* With regard to closing argument, "[d]efense counsel is given wide latitude." *Chavez v. State*, 307 Ga. 804, 812 (2) (c) (837 SE2d 766) (2020) (citation and punctuation omitted). Georgia appellate courts "will not, with benefit of hindsight, second-guess defense trial strategies therein. Absent a strong showing

19

that counsel's actions were not reasonable, we will presume that these strategies were not deficient." Id. (citation and punctuation omitted). Moreover, "[i]t cannot be said that trial counsel was ineffective simply because another attorney might have used different language or placed a different emphasis on the evidence." *Davenport v. State*, 283 Ga. 171, 175 (5) (656 SE2d 844) (2008). "[T]he inquiry into the reasonableness of counsel's strategic decisions is an objective one." *Chavez*, 307 Ga. at 812 (2) (c). To meet his burden of proving deficient performance, Shelnutt must show that his trial counsel's decision to address information the jury had heard about Shelnutt was "objectively unreasonable." Id.

At the motion for new trial hearing, Shelnutt's counsel testified that he made the comments about Shelnutt's post-crash interview during his closing argument as a "Hail Mary" strategy because the facts against Shelnutt were "so bad." Counsel testified that, during his closing argument, he was trying to: (i) "personalize Mr. Shelnutt"; (ii) "illustrate even in this, even when he's in serious trouble, he is still being [himself], a stubborn man but not someone who's trying to hit police officers"; and (iii) convey that the jury did not have to "like" his client in order to acquit him of the charges.

20

The trial court compared counsel's comments about Shelnutt to other cases in which defense counsel criticized a defendant during trial and found that in Shelnutt's case "there was no prior bad act, similar transaction, impeachment, or gang activity evidence that would have made [trial counsel's comments] necessary." We do not agree that the only circumstances under which it may be reasonable for defense counsel to address negative evidence about a defendant is limited in this way. "Again, the inquiry into the reasonableness of counsel's strategic decisions is an objective one." *Chavez*, 307 Ga. at 812 (2) (c). The jury heard testimony and received evidence that after the crash Shelnutt (i) admitted he was angry about being evicted, (ii) saw the deputies and their location when he was driving his truck toward the property, (iii) responded to questions about why he struck the deputies' vehicles by stating that "it got the officer[s'] attention, didn't it?", and (iv) became irate when questioned about the absence of skid marks at the crash site. Even if trial counsel's language arguably may have been ill-phrased, we cannot say that his decision to comment on Shelnutt's behavior was objectively unreasonable — especially in light of counsel's testimony that his "Hail Mary" strategy for closing argument was to convince the jury that they did not have to convict Shelnutt merely because he was a stubborn, hardheaded man. See id. 812-813 (2) (c) (defense counsel's comments during closing argument that the

21

defendant was "everything that is deemed undesirable in our society right now" and that he had a drug conviction and a gun and was a "[b]ad person" as part of his strategy of showing that the defendant had "a constitutional right to hold the State to a burden of proof of beyond a reasonable doubt, even if the jury did not like him or what he represents," was not an objectively unreasonable strategy) (punctuation omitted); *Wheeler v. State*, 290 Ga. 817, 821 (6) (c) (725 SE2d 580) (2012) (defense counsel's strategic decision to call his client, during closing argument, "the meanest SOB in Grady County" was not unreasonable as an effort to minimize the potential effect of similar transaction evidence that had been admitted at trial). We conclude that Shelnutt's trial counsel's comments were not objectively unreasonable given that they were part of his strategy of addressing the conduct that the jury had already heard by illustrating that Shelnutt may be a stubborn man but was not someone who would have intentionally hit law enforcement officers. See, e.g., *Chavez*, 307 Ga. at 812-813 (2) (c); *Wheeler*, 290 Ga. at 821 (6) (c).

*(b) Prejudice.* Regardless, even if trial counsel performed deficiently, we also agree with the State that his comments were not prejudicial in light of the substantial evidence that Shelnutt acted intentionally when he drove his truck toward the

22

deputies and into their vehicles. We likewise agree with the State that it was not trial counsel's comments, but Shelnutt's own recorded behavior, that was prejudicial.

As stated previously, to establish prejudice, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Chavez*, 307 Ga. at 809 (2) (citation and punctuation omitted). Thus, Shelnutt must establish that, but for counsel's comments during closing argument, as described above, there is a reasonable probability that the result of the trial would have been different. At the motion for new trial hearing, Shelnutt's counsel testified that the case against Shelnutt was a strong one and that it would have been difficult "to have a theory of innocence that embraced all [of] the facts." And, the State presented substantial evidence that Shelnutt acted intentionally when he drove toward the deputies and into their vehicles, including the dash cam video recording of the crash, the crash scene investigation report, photographs and testimony about the damaged vehicles, and the video recording of Shelnutt's in-custody statements regarding the crash. "In light of the overwhelming evidence of [Shelnutt's] guilt, he has failed to demonstrate that but for the handful of comments in [his trial counsel's] closing argument discussed above, there is a reasonable probability that the outcome of the trial would have been more favorable to him."

23

*Reed v. State*, 291 Ga. 10, 17 (4) (b) (727 SE2d 112) (2012) (citation and punctuation omitted); see also *Fulton v. State*, 278 Ga. 58, 65 (8) (597 SE2d 396) (2004) (finding that while counsel performed deficiently by not objecting to the State's comments in closing that the defendant was a "menace to our society" and a "cancer in the community" who needed to be excised "to protect the community" and the jurors since there were "no walls around [defendant's] neighborhood that would prevent something like this from happening in [their] communities," the failure to object was not so prejudicial that there was a reasonable probability that the outcome of the trial would have been different) (punctuation omitted). Therefore, because Shelnutt has not shown that trial counsel's comments during closing were objectively unreasonable or prejudicial, we conclude that he did not meet his burden of proving ineffective assistance of counsel in this regard.

5. Lastly, we must consider the cumulative effect of prejudice resulting from any actual or assumed deficiencies in counsel's performance. See *Mitchell v. State*, 308 Ga. 1, 9 (2) (f) (838 SE2d 820) (2020). "Assessing cumulative prejudice is necessary only when multiple errors have been shown," *Scott v. State*, 309 Ga. 764, 771 (3) (d) (848 SE2d 448) (2020), and as we found in Divisions 1-4, Shelnutt has not established even one instance in which trial counsel was deficient. Cumulative

24

prejudice is therefore not a ground for affirming the trial court's grant of a new trial. See *Washington v. State*, 313 Ga. 771, 778 (3) (f) (873 SE2d 132) (2022) (cumulative prejudice was not shown where defendant failed to establish even one instance of deficient performance).

*Judgment reversed. Doyle, P. J., and Reese, J., concur.*